Swartz & Holman, for appellants.

---

## NANCY A. WEST V. ADEN G. CAVINS, EX'R.

1. *Appeals from Decisions Concerning a Decedent's Estate.*—Such appeals are wholly governed by the provisions of the act concerning the settlement of estates. Any one aggrieved by a decision growing out of such a matter may appeal by filing bond, as provided.

2. *Waiver of Bond.*—Such bond is given for the benefit of the opposite party; and the opposite party may waive his right to it by failing to object in time in the Supreme Court to the want of a proper bond.

3. *Objection to Answer on Interrogatory.*—The proper method of raising such objection in the trial court is to object to the receiving of the verdict until the question is properly answered. The question of its sufficiency cannot be raised by a motion for a *venire de novo*.

4. *Correcting a Will by a Note.*—A desire to correct the inequalities of a will is not a sufficient consideration for a promissory note given for that purpose only. *Mallett* v. Page, 8 Ind. 364, disapproved. Such notes cannot be upheld, either as gifts *inter vivos* or *causa mortis*, nor as a testamentary disposition.

[The note herein was claimed to be for services rendered the testator; and hence the case was reversed.]

Filed June 23, 1881.

Appeal from Greene Circuit Court.

Opinion of the court by Mr. Justice Woods.

The first question to be decided in this case arises upon a mo-

tion to dismiss the appeal.   The appellant filed a claim against the estate of Edward West, of whose last will the appellee was the executor.   In *Seward* v. *Clark*, 67 Ind. 289, overruling *Hamlyn* v. *Nesbit*, 37 Ind. 284, this court held that the right of appeal from any decision or judgment upon a matter connected with a decedent's estate, is given and regulated wholly by the provisions of the act concerning the settlement of estates.   Sections 189 and 190 of that act, as they must now be read, see *Seward* v. *Clark, supra*, provide that any person considering himself aggrieved by any decision growing out of a matter connected with a decedent's estate, may appeal to the Supreme Court, upon filing with the clerk of the court below a bond, with penalty in double the sum in controversy, in cases where an amount in money is involved, and, in other cases, in a reasonable sum to be designated by the clerk, with sufficient surety, payable to the opposite party in such appeal, conditioned for the diligent prosecution of the appeal, and the payment of all costs, if costs be adjudged against the appellant, which bond shall be filed within thirty days after the decision complained of is made, unless for good cause shown, this court shall direct the appeal to be granted on filing the bond within one year after the making of the decision.   *Bell* v. *Mousset*, 71 Ind. 347 ; *Seward* v. *Clark*, 67 Ind. 289.

The judgment appealed from was rendered April 5, 1878, and the transcript filed with the clerk of this court November 26, 1878, but no appeal bond was filed as required and for this cause we are moved to dismiss the appeal.   The appellant claims that the motion came to late, and that the right thereto has been waived. The case on appeal was submitted by agreement on February 5, 1879, and briefs upon the merits filed by each party.   The motion to dismiss was not made or filed until February 7, 1881.

We think the appeal ought not now to be dismissed.   Had the motion been made before or at the time of the submission, the appellant could have applied to this court for leave to file the bond within a year from the judgment.   The bond is required for the benefit of the appellee, must be made " payable to the opposite party in such appeal," and we see no reason for holding that the right thereto may not be waived.   An agreement to submit made within the year allowed for the appeal, and a postponement of the motion

to dismiss beyond that time, in good conscience, should be held to constitute such waiver. See *The State* v. *Walters*, 64 Ind. 226.

This brings us to the merits of the errors assigned, which are, that the court erred in overruling the respective motions of the appellant for a new trial, for a *venire de novo*, and for judgment in her favor upon the special findings of the jury notwithstanding the general verdict.

Supporting it by the usual affidavit, the plaintiff filed the following note as a basis of her claims:

"EAST MONTPELIER VT., August 24, 1874.

"For value received I promise to pay Nancy A. West, or order, the sum of seven thousand dollars (7000), at my decease, without interest. EDWARD WEST."

The defenses filed were, first, no consideration; and second, that said Edward West wrote his name on a blank piece of paper and delivered it to the plaintiff, who, afterwards, without the knowledge or consent of said Edward, wrote the note sued on over said signature, with the intent to defraud the said Edward, his heirs, legatees and assigns. Reply in general denial.

Upon a second trial by jury there was a general verdict for the defendant, and answers to interrogatories as follows:

1. At the date of the note sued on, was the deceased indebted to the plaintiff for anything? If so, for what? and how much? Answer, No.

2. At the date of the note, had the plaintiff rendered any service for the deceased for which there was an agreement and intention by both parties that the deceased should pay? If so, what were such services? Answer, Was not.

3. If the note was given, was it done for the purpose of equalizing Jeremiah's family under the will with the deceased's other brothers? Answer, It was.

4. If the note was given, was it intended as a gift to the plaintiff? Answer. It was.

There is nothing in these answers necessarily inconsistent with the general verdict. The first and second interrogatories do not, in terms, relate to the note in any respect, except the date, and any indebtedness of the deceased to the plaintiff, if found to have ex-

isted, would have been immaterial in the absence of a further find-
ing that the note was given therefor. The third answer is without
significance, because it is not found, and does not appear in the
pleadings, who Jeremiah was, nor that the plaintiff was connected
with his family; and if it were conceded that natural love and affec-
tion between those near akin would support a promise, based on no
other consideration, the fourth question and answer cannot avail
the appellant, because it is not found nor admitted in the case that
she bore any such relation to the deceased. The motion for judg-
ment for the appellant on the facts found, notwithstanding the
general verdict, was, therefore, properly overruled. Neither was
there any error in overruling the motion for a *venire de novo*.
From what has already been said, it is evident that if the third an-
swer had been specific and clear and favorable to the appellant, it
could not have affected the validity of the general verdict. The
defective answer, therefore, does the appellant no harm. *P., C. &*
*St. L. R. R. Co.* v. *Noel*, (last term). But if the answer could
have been material, a motion for a *venire de novo* was not the
proper means to raise the question of its sufficiency. The appel-
lant should have objected to the receiving of the verdict until the
question had been properly answered, and if her exception had been
overruled, should have saved his objection to that ruling. Bus-
kirk's Practice, 219; *McElfresh* v. *Guard*, 32 Ind. 408. The an-
swers to the third and fourth interrogatories do not involve any
such inconsistency, but that they may stand together. The note
may, at the same time, have been a gift, and given " for the purpose
of equalizing Jeremiah's family," etc. If, therefore, inconsistency
between answers to interrogatories could be cause for a *venire de*
*novo* where there is a general verdict covering all the issues, that
cause does not exist in this case.

Among the causes assigned for a new trial is error of law in
the admission over objection of the following testimony:

" At the June term, 1877, of this court, there was a trial of an
action on this note between the same parties." The case was * *
tried by the plaintiff upon the theory that there was no consider-
ation of the note but the desire of the testator to equalize the fam-
ily of his brother Jeremiah with his other brothers in his will.
Theis was claimed by the plaintiff's attorney on the presentation

of the case to the court for trial, and stated in the argument to be the consideration. The plaintiff herself was then in Bloomfield, but was not present. After argument on the legal question as to whether that was a sufficient consideration, the court intimated an opinion that it was not and the suit was then dismissed by the plaintiff before the finding was announced.

Objection to the admission of this testimony was made on the ground that it was hearsay, not shown to have been authorized by the plaintiff and not competent, proper or material evidence; that it was not proper to admit evidence of admissions of facts made by counsel in the absence of the party, nor to prove that a former suit on the same note was dismissed, nor at what stage and under what circumstances it was dismissed.

The evidence in the case tends strongly to show, and, perhaps the great preponderance of it, including admissions shown by several witnesses to have been made by the plaintiff, does show that the note was made solely for the purpose of equalizing the family of Jeremiah's with the other brothers of the deceased; but there was evidence that at and before the time the note bears date the plaintiff had rendered personal services to the deceased during visits of a few days or weeks at her house; that the note was made during the last of these visits, no one being present or having a knowledge of the transaction except the plaintiff and the deceased. One witness testified that sometime in 1874, the deceased told him that he had given the plaintiff a note for $7,000, due after his death; that she and her daughter had been good and kind to him and waited on him when he was sick, and "I understood him to say he gave her the note for it." The testimony of this witness, as well as that of other witnesses tending in the same direction, was, in some measure, perhaps strongly, impeached and discredited, but it became a question for the jury, and, by pertinent instructions of the court, it was left to the jury to determine whether the services referred to constituted the consideration of the note, or any part thereof. Under the plea of no consideration, proof of any consideration, however small in value, was enough to support the contract, and the plaintiff herself not being a competent witness, and being, therefore, unable to explain or deny the admissions claimed to have been made by her, had a right that every circumstance proven in her favor should

go to the jury undiminished in force by the admission of any incompetent evidence to the contrary. Had she been a competent witness, and voluntarily had permitted the testimony concerning her alleged admissions to go unchallenged and unexplained, we might, perhaps, say that it was clear that the testimony complained of was of no importance, or too insignificant to have affected the conclusion of the jury. Yet we should greatly hesitate before so deciding. As a general rule to which there can hardly be an exception, if there is such evidence in support of a proposition as to require its submission to the jury at all, and incompetent but pertinent testimony on the subject is omitted, this court cannot, upon a consideration of the weight of the evidence pro and con, say that the error was harmless.

That the testimony under consideration was incompetent but calculated greatly to influence the mind of the jury, we have no doubt. If the plaintiff herself had been a witness, she might doubtless on cross-examination have been asked in reference to the theory on which she prosecuted the first action, and what consideration she claimed for the note at that time, but even if it were permissible to prove admissions made by counsel on such trial, it was not competent for a witness to state in a general way, as was done in this case, on what theory the suit was prosecuted, and upon what intimations of the court the case was dismissed. This is no proof of what the attorney said or admitted. Whether an attorney in the absence of the client, could make an admission of fact which would be binding on the client, except for the purposes of the pending case we are not required to decide, but see the following authorities cited by counsel pro and con: 1 Greenleaf on Ev. sec. 186; 1 Phil. on Ev. side p. 524; *Longley* v. *Oxford*, 1 M. & W. 508; *Frye* v. *Gregg*, 35 Me. 29; *Colledge* v. *Ham*, 3 Bing. 119; *Moffitt* v. *Whitherspoon*, 10 Ired. (N. C.) 185; *Trustees, etc.* v. *Bledsoe*, 5 Ind. 133; *Wheat* v. *Ragsdale*, 27 Ind. 191; *Hays* v. *Hynds*, 28 Ind. 531; *Booker* v. *Golsborough*, 44 Ind. 490; *Cook* v. *Barr*, 44 N. Y. 156; Code sec. 324; 2 Wait's Prac. 374.

There was no error in admitting the testimony of the witness, West, concerning the fact of the sending, and the time when the deceased sent $100 to the plaintiff. It tended, in some measure, legitimately to discredit the testimony of the witness, Paterson,

concerning his alleged conversation with the deceased on the sub-
ject of the desire of the deceased to send that sum to her.

It may be, as suggested, that the conversation with Paterson
occurred and had reference to the sending of an equal sum at a
subsequent time, but that was a question for the jury to decide in
the light of all competent evidence. The testimony of West was
competent, and relevant not only to the subject and for the purpose
indicated, but for another purpose. If the deceased had, in the fall
of 1873, as the witness testified, sent to the plaintiff, or her hus-
band, the sum of one hundred dollars, it was a fact proper to be
considered in determining whether the note sued on was given to
compensate her for her acts of service and kindness to the deceased.
The testimony on this point being largely circumstantial, the
sending of this sum of money at that time as a gift, was, to say
the least, pertinent and of some significance.

The more important question presented for decision, is dis-
cussed by counsel in reference to instructions given and refused.
An instruction was given to the effect that the desire of the deced-
ent to rectify an inequality in the provisions of his will was not a
sufficient consideration to support the note if given for that pur-
pose only, and the court refused to give an instruction requested by
the appellant to the effect that if the note was given to rectify an
inequality in a will then existing, and afterwards the decedent ex-
ecuted another will in which he left a similar discrepancy in the
legacies to his brothers, the plaintiff (who was the wife of the
brother Jeremiah) still holding the note, the note is a valid note
and supported by a sufficient consideration.

The only authority cited in support of the instruction asked,
and refused by the court, is the case of *Mallett and wife* v. *Page*, 8
Ind. 364. In that case for the purpose of disposing of his prop-
erty, and for no other consideration, a father procured his son to
execute to his minor daughter two notes for $3,000, and, to secure
the payment of the same, to execute a mortgage on certain land of
the father, which he proposed and intended thereafter to convey to
the son. The notes and mortgage were delivered to the daughter,
and the mortgage having been duly recorded, the father took
charge of the papers; but afterwards changing his mind, probably
on account of his displeasure at his daughter's marriage, he des-

troyed the notes and mortgage and did not convey the land to the son. The action was by the daughter and husband against the father and son. This court held that the father was estopped by the recitals in the mortgage, made as it was by the son under his direction, from contesting the title of the mortgaged premises, that natural love and affection was a good consideration for the notes and mortgage, and that the father could not show any contemporaneous verbal understanding between him and his son inconsistent with the face of the mortgage. *Jacobs* v. *Hinkle*, 7 Blf. 432, being cited in support of the latter proposition.

The case cited supports the general proposition that a party to a written agreement cannot set up against it a contemporaneous verbal understanding of the parties, but, as we conceive, was not in point for the purpose for which it was cited. The father was not a party to the mortgage, and there was, therefore, no estoppel by deed against him. There was no estoppel *in pais*, because the facts were equally well known to all the parties. If the father had made a binding contract with the son to convey the land, and, in consideration of that contract, the son had executed the note and mortgage, the transaction would have been entirely valid and binding on all the parties, and the conclusion of the court on the whole case clearly right; but, on the facts as stated in the opinion, there was no consideration to uphold the notes and mortgage against the son who made them, except his father's promise to convey to him the land embraced in the mortgage; but this promise, if the case shows a promise, was in parol only, was not accompanied with a delivery of possession of the land, and by reason of the statute of frauds was incapable of being enforced. The mortgage was only an incident of the notes, and constituted no estoppel against the making of proof that the notes were given without consideration, or upon a consideration which had failed; and once the notes went down for want of consideration, the mortgage should have gone with them. There can be no pretense that the love and affection of the brother for his sister was the consideration on which he made the notes and mortgage, and it must be equally clear that the father's love for the daughter could not serve to bind the son to a promise, which he made on the strength of the father's promise to convey to him a tract of land. We think the entire reasoning of this case was misconceived and erroneous.

While natural love and affection is a good consideration for a deed, or for any executed contract, as between the parties thereto, it is not so far an executory contract; and, so when a father gave one of his sons a note for a thousand dollars, remarking that he had met with losses, and was not as wealthy as his brother, it was held that an action could not be maintained on the note against his father's executor. *Fink* v. *Cox*, 18 John R. 145. It was there said that, " In such a case, the consideration must be a valuable one for the benefit of the promiser, or to the trouble, loss or prejudice of the promisee." The note here manifested the mere intention to give the one thousand dollars. It was executory, and the promiser had a *locus penitentiæ*. It was an engagement to give, and not a gift." This doctrine is elementary. Edward on Bills, side page 324; Chitty on Bills, side pp. 74–76 and notes; 1 Parsons on Notes and Bills, 178–9; Byles on Bills, side p. 123; 2 Kent's Com., side p. 439; Story on Bills, 189, sec. 181; *Hamer* v. *Morse*, 8 Ohio St. 239; *Starr* v. *Starr*, 9 Ohio St. 74; *Clapp* v. *Sawyer*, 6 N. H. 386; 1 Daniels on Neg. Inst., 24; Bigelow on Bills and Notes, 88. These authorities show that such notes cannot be upheld, either as gifts *inter vivos* or *causa mortis*, and it need hardly be stated that they cannot be valid as testamentary dispositions.

The judgment is reversed with costs, and remanded, with instructions to grant a new trial..

Baker & Shaw, for appellant.

Franklin & Cavins, for appellee.