## HAYS *v.* HYNDS.

PRACTICE.—An application for leave to withdraw a reply, for the purpose of entering a motion to strike out parts of the answer, was held to be addressed to the discretion of the court, and the action thereon not subject to review on appeal, because the substantial rights of the parties could not be affected by the decision.

ADMISSIONS OF COUNSEL.—EVIDENCE.—On a former trial, the plaintiff's counsel had admitted certain things to be true, but before the second trial began, gave notice that said facts would not again be admitted. The defendant's counsel having again offered the admission, objection was made, and proof offered that the admission had been made by the attorney without the knowledge of his client, and for the purposes of the former trial only, to save time.

*Held*, that the admission could not be given in evidence.

DEPOSITIONS.—ORDER SUPPRESSING.—The deposition of the same witness having been taken in a cause twice on behalf of the defendant, the plaintiff afterwards moved the court to suppress "depositions herein taken on the part of the defendant," and the motion was sustained. The first deposition being offered in evidence, the plaintiff objected, on the ground that it had been suppressed.

*Held*, that the order of the court was too indefinite to indicate any particular deposition, and was therefore insufficient to justify the exclusion of any.

EVIDENCE.—The declaration of the holder of a bill of exchange that it had not been paid, cannot be given in evidence by his assignee against the other parties liable on the bill, to prove the fact of such non-payment.

INSTRUCTIONS.—The instructions of the court to the jury should be pertinent to the case as made by the evidence.

APPEAL from the *Putnam* Circuit Court.

FRAZER, C. J.—This case was here before, and is reported in 25 Ind. 31. Upon being again tried below, a general verdict for the defendant resulted, followed by a judgment thereon, and the plaintiff now appeals.

1. The first step of the appellant in the court below, after the cause was remanded, was to apply for leave to withdraw his reply, with a view to moving to strike out parts of the fourth paragraph of the answer which alleged that a portion of the consideration received from the *Bank of Gosport*, in discounting the bills, was the notes of individuals in the similitude of bank notes, &c. Leave was refused, and this is assigned for error. This motion was supported by the plaintiff's affidavit, showing that when the issues were made up, such individual notes were held by this court to be illegal; while now they are held to be legal. The references in the affidavit are, doubtless, to *Brown* v. *Killian*, 11 Ind. 449, and *James' Adm'r* v. *Rogers*, 23 Ind. 451, and so it is stated in the briefs. We have not regarded those cases as in conflict. The questions were altogether different, and each finds its solution in principles not at all applicable to the other. But aside from this, it was altogether in the discretion of the court below to grant or refuse the motion as it thought fit, and as its action either way could not deprive either party of any substantial right upon the merits, we are not of opinion that the ruling in question is subject to review here.

2. Upon the previous trial of the cause, it appeared by a bill of exceptions then filed, that the plaintiff admitted "that *Citizens' Bank* bills, *Wampler's* checks, *Hays & Alexander's* checks, and *Alexander & Williams's* checks, were unauthorized, illegal currency." Before the last trial began, the

plaintiff notified the defendant that this admission would not again be made. The defendant proposed to read the admission in evidence, from the bill of exceptions, and the plaintiff objected, showing by proof that it was made by counsel in the plaintiff's absence, and without his knowledge or authority, for the mere purposes of that trial, to save time. The court overruled the objection and admitted the evidence. The appellant insists that this was error, and such is our opinion. We may suppose that counsel may bind a client by an admission, and that in the given case the admission cannot afterwards be retracted by the client. Such admission may be general, for all the purposes of the case, or it may be limited to a special occasion, as a particular trial, as in *Wheat* v. *Ragsdale,* 27 Ind. 191. A bill of exceptions containing the evidence, where the admission was of a fact, need only show that the fact was admitted, without showing whether the admission was confined to the purposes of that particular trial or not. It was so here. Then that question was open to proof, and when it appeared, as in this case, that the admission was limited to the trial then pending, merely to save time, and that the client had no knowledge of the admission, and never expressly authorized it, and when the opposite party was put on his guard by timely notice that the fact would not again be admitted, it seems to us that it was error to allow the evidence of the previous concession to go to the jury. It would, as a rule, tend to defeat rather than promote justice; would discourage the making of concessions upon *nisi prius* trials, as to facts not deemed necessary to contest, and thereby protract them, and render them more expensive and vexatious; and all this would be compensated by no good results whatever.

3. The deposition of *William D. Alexander* was admitted in evidence over the appellant's objection. The appellant claims that it had been suppressed. The deposition was taken on the 29th of *October,* 1860. When it was filed, does not appear. An agreement of counsel to publish "the dep-

osition of *William D. Alexander*" was filed February 13th, 1861. A deposition of the same witness was subsequently taken, which was filed and published on the 14th of *May*, 1861, on which day the following order was made: "Come now the parties by their attorneys aforesaid, and now by agreement of parties the depositions herein are filed and published, and said plaintiff now moves to suppress the depositions herein taken on the part of the defendant; and the court being duly advised in the premises sustains said motion, to which ruling of the court the defendant excepts." It appeared, also, that the deposition of *October* 29th, 1860, was used in evidence by the defendant on the former trial without objection, and without any agreement that it might be read. We think that the deposition was properly admitted. The order suppressing depositions did not purport to suppress all the depositions taken on behalf of the defendant; indeed, we regard it as too indefinite to indicate any particular deposition, and therefore insufficient of itself to have justified the exclusion of any.

4. Evidence went to the jury, over the appellant's objection, showing that the defendant had a contract with *William D. Alexander*, president of the bank which discounted and held the bills sued on until after their maturity, to deliver to *Alexander*, who was also a pork dealer, a quantity of fat hogs at *Louisville, Kentucky*, about the time the bills matured. This was offered in connection with other evidence tending to prove the actual delivery of the hogs, amounting in price to more than the bills, and that in consideration thereof *Alexander* agreed to pay and did pay the bills. That this evidence was properly admitted, in view of the other evidence alluded to, is, we think, too plain for discussion.

5. During the progress of the trial, the court refused to allow this question to be answered by a witness: "Whilst *William D. Alexander* was acting and conferring as the president of the *Bank of Gosport*, with you as cashier of that bank, in reference to the business of such bank, what did he

say was the state of the accounts between himself and the bank, if anything?" We know of no rule of law which would have justified the court in permitting the question to be answered. The appellant argues that the declarations of *Alexander*, under the circumstances stated in the interrogatory, were the declarations of the bank and therefore its admissions, and that the answer of the witness might have tended to prove that the bills had not been paid. But we do not suppose that the declarations of the holder of a bill of exchange that it remained unpaid, can be put in evidence by his assignee, against the maker, indorser or acceptor, to prove that it had not been paid. The law is plainly the other way.

The evidence showed that all the bills sued on were discounted at the *Bank of Gosport*. As to one of them, there was no question concerning the consideration. As to the others, it is clear that some indefinite part of the consideration was paid in the worthless and unauthorized issues of pretended banks, which never had any legal existence, and of which the *Bank of Gosport* was the prolific parent. About $250 had been paid on one of the bills by the return of that much of the paper which had been received upon it from the bank, but no credit was given the defendant therefor. The defendant sold hogs to *William D. Alexander*, who was president of the bank, and who was, in consideration thereof, to pay the bills, and he testified positively that he did pay similar bills to the bank for the defendant, as he had agreed to do. These were the only bills held by the bank against the defendant, except some which the defendant had himself paid. *Alexander* did chiefly all the business of the bank, receiving and paying out money. When called upon by the defendant, at the bank, to deliver up the bills, he repeatedly stated that they were fully paid, but did not surrender them, giving various reasons, mainly, the want of time to settle with the defendant. He would, after having paid the bills, still individually owe the defendant about $1,600 on the hogs.

Finally, he said he could not surrender them because they had been abstracted from the bank.   They were, after maturity, indorsed by *L. M. Hays*, the cashier, to the plaintiff, to secure the latter, and the cashier and another, upon a liability as sureties of the bank to one *Aquilla Jones*, for deposits made by the latter in the bank.   It did not appear that this was done with *Alexander's* knowledge.  *Hays*, the cashier, testified that the bills were never paid to the bank to his knowledge.  Another cashier, who came into office after the bills went into the plaintiff's hands, testified to the same effect.  There was also evidence tending to show that the defendant did not, for some time after the plaintiff received the bills, dispute his liability or claim that they were paid.   This was however contradicted to some extent.  It appeared, also, that *Alexander* and *Hays* had a private drawer in the bank, and that two of the bills were, in fact, discounted with their funds, though the defendant had no knowledge of this, and supposed he was dealing with the bank.   These two bills were passed to the bank before maturity.

The jury were instructed, upon the appellee's motion, as follows:

1. Payment may be made in anything or article which the party to whom the claim or debt is due is willing to receive in payment.

2. Payment may be made to an agent as well as to the principal debtor, when the authority of the agent goes to the extent of collecting and receiving the payment.

3. If you should find that *William D. Alexander* was president of the Bank of Gosport; that said bank discounted and held these bills at their maturity, and that *Alexander* had the authority to receive and settle such bills, and that the defendant, at or after their maturity, paid said bills to *Alexander* as president, then you must find for defendant.   And a payment made by *Alexander* for defendant to the bank would operate in the same manner, under the same circumstances."

This was wrong. We need not decide whether a bank can receive hogs, or anything but money, in payment of bills held by it in the course of its business. There was no shadow of evidence tending to show that anything but money had been paid. The hog transaction, it was not questioned by the evidence, was with *Alexander* in his private capacity as a pork-dealer, and not as president of the bank; and there was therefore nothing in the case to call for an instruction that payment could be made in any article which the creditor was willing to receive as payment, and it could only tend to lead the jury to confound the private hog transaction between the defendant and *Alexander*, with the transactions between the defendant and the bank, through *Alexander*, acting as its president. Instructions should be pertinent to the case. Juries are apt to assume, and are justified in assuming, that they are applicable. This could only be so upon the ground that *Alexander*, acting as a pork-dealer, was doing business for the bank, and unless the jury utterly disregarded the instruction, it could scarcely fail to mislead them.

The following instruction was also prayed by the appellee, and given:

4. If you should find from the evidence, that *William D. Alexander* was president of the *Bank of Gosport;* that the said bank discounted and held these bills of defendant, on which this suit is brought, at their maturity, and that said *Alexander* was held out as having, or had any authority to receive and settle such bills, and that the defendant, at the maturity of the bills, or at any time after their maturity, while said *Alexander* acted as president and agent of the bank, paid said bills to *Alexander*, as such president, then you must find for defendant.

This, also, though good law, was calculated to mislead. There was no evidence that the bills had been discharged by payment to *Alexander*. It could only be applicable to the case upon the theory that the hog transaction was with the bank. It tended therefore to induce the jury to con-

found *Alexander's* private transactions with his official acts, when the case demanded that the two characters should be carefully distinguished and kept separate.

The judgment is reversed, with costs, and the cause remanded for a new trial.

ELLIOTT, J., was absent.

*J. E. McDonald, A. L. Roache, D. Sheeks, S. H. Buskirk, J. S. Broadwell* and *J. M. Hanna,* for appellant.

*W. R. Harrison* and *W. S. Shirley,* for appellee.

