## CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. CASE.

[No. 21,307. Filed March 15, 1910. Rehearing denied June 22, 1910.]

1. APPEAL.—*Erroneous Instructions.—Presumptions.*—On appeal, the presumption is that the error committed in giving an erroneous instruction was prejudicial, and the burden of showing that it was harmless rests upon the appellee. p. 376.

2. CARRIERS.—*Passengers.—Injuries.—Loss of Time.—Complaint.*— A complaint alleging that the defendant railroad company's train collided with another train on its track, that the plaintiff who was a passenger, was violently thrown from the car, bruising and wrenching the muscles of his back so that he has been and now is unable to perform manual labor, that he was compelled to quit school, that he has been deprived largely of the use of his legs, and that he was thereby permanently disabled, fails to show any special damage for loss of time. pp. 377, 378.

3. TRIAL.—*Instructions.—Applicability to Evidence.*—Instructions should be applicable to the evidence. pp. 377, 378.

4. DAMAGES.—*Recovery of.—Amount.*—In an action for damages for wrongful act, all damages proximately resulting from such act are recoverable. p. 377.

5. DAMAGES.—*Special.—Loss of Time.—Complaint.*—Damages for loss of time occasioned by defendant's wrongful act must be specially alleged and proved. p. 377.

6. CARRIERS.—*Railroads.—Damages.—Loss of Time.—Instructions. —Applicability to Evidence.*—Where the complaint alleged that defendant railroad company's train collided with another, that the plaintiff who was a passenger, was injured thereby so that he was and continues to be unable to labor and is permanently disabled, an instruction that if the finding should be for the plaintiff, loss of time, if any, should be considered in estimating the damages, is wholly irrelevant, no such damage being alleged. p. 378.

7. DAMAGES.—*Instructions.*—*Inapplicability.*—*Prejudicial.*—An instruction that the damages assessed should include loss of time, if any, and should be of such an amount as "from the evidence" will compensate the plaintiff for the injury sustained, is not shown to be harmless by the giving of other and correct general instructions as to damages, where there was no evidence as to loss of time. p. 380.

8. CARRIERS.—*Railroads.*—*Instructions.*—*Assuming Facts.*—An instruction that the plaintiff should be given damages to "compensate him for the injury thus sustained," assumes that an injury was sustained. p. 381.

From Superior Court of Tippecanoe County; *Henry H. Vinton,* Judge.

Action by Fred S. Case against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*L. J. Hackney, Stuart, Hammond & Simms, Allison E. Stuart* and *F. L. Littleton,* for appellant.

*Ryan & Ruckelshaus* and *Haywood & Burnett,* for appellee.

JORDAN, J.—This action was commenced by appellee on October 25, 1905, to recover damages arising out of the negligence of appellant company. The complaint is in two paragraphs. There is no substantial difference between the paragraphs so far as the alleged negligence on the part of said railroad company in running its train is concerned.

In the first paragraph it is alleged, among other things, that on October 31, 1903, a game of football had been arranged between the football teams of Purdue University, at LaFayette and the Indiana University, at Bloomington, to be played at the city of Indianapolis at 2 o'clock in the afternoon; that on said day about two thousand persons from LaFayette and Purdue University went over appellant's railroad to Indianapolis to witness the game; that, to accommodate this large number of persons, appellant company provided a special train, which was made up of twenty-five passenger-coaches, and was known as the "Pur-

due Special,'' and was to be run in two sections from the
city of LaFayette to the city of Indianapolis; that the first
section of this train, after passing into the limits of the
city of Indianapolis, was run at the speed of thirty miles
an hour, in violation of the speed ordinance of that city,
which limited the speed of railroad trains to four miles an
hour; that said section, while so running, collided with a
cut of coal-cars, which cut was negligently run backwards
by appellant on the same track; that appellee was a pas-
senger from LaFayette on said section; that in the collision
the engine of the train was thrown from the track and a
number of the coaches of said special train, including the
coach in which appellee was a passenger, were crushed and
torn to pieces; that by reason of said collision, fourteen pas-
sengers were instantly killed and forty or fifty others were
seriously injured. In respect to the injuries sustained by
plaintiff, the complaint alleges that he, as the direct result
of such collision, was thrown violently against the seats and
sides of the coach and other hard substances in and about
said coach, and was thrown from the coach in which he was
riding upon the ground among the dead and wounded pas-
sengers, and that as a result thereof he received a severe
nervous shock and was much bruised and wrenched; that
the muscles of his back were bruised and wrenched, and
there was also a concussion of the spinal cord, resulting in
an affection of a permanent injury to the lumbar nerves
and other nerves in the lumbar region of the body; that
because of said injuries, plaintiff is unable to perform
manual labor or to perform any labor that requires lifting
or bending over, or quick motion of the body or legs. Plain-
tiff alleges that at the time he received said injuries he was
nineteen years old, in good health, and had no deformity
or injuries; that he was a freshman in Purdue University,
and had entered said university to take a four years' course
in civil engineering; that while he continued his studies
in school, and was able to walk around and do light work,

he has constantly suffered physical pain, and on account of
said injuries he was compelled to quit school at the end of
the first year, and that he has been and is now unable to
do manual labor, or to do work that requires much sitting
or stooping; that he has been rendered unable to enjoy life
to the extent of being deprived largely of the use of his
legs and body, and has been permanently disabled and sub-
jected to great physical and mental suffering, and that
by reason of all of which, and by reason of the negligent
acts of defendant as averred, he has been damaged in the
sum of $15,000, for which he demands judgment.

The answer of appellant was a general denial. There
was a trial by jury and a verdict returned in favor of ap-
pellee, assessing his damages in the sum of $7,000. Over
appellant's motion for a new trial, the court rendered
judgment upon the verdict.

The assignments relied upon by appellant for reversal
are (1) that the verdict is not sustained by sufficient evi-
dence; (2) that the court erred in admitting and reject-
ing evidence; (3) that the court erred in the giving and
in refusing to give certain instructions; (4) that the
damages were excessive.

It appears from the evidence that appellee attained the
age of twenty-one years on May 9, 1905.

The negligence of appellant, leading up to the collision,
is conceded by its counsel, but their insistence is that there
is an entire absence of any evidence to establish that appel-
lee, by reason of the accident in question, received any
physical injury whatever. It is argued that the evidence
affirmatively shows that he received no such injury, but
that the nervous condition and ailments of which he com-
plains existed prior to the accident, and were only aggra-
vated by reason of his being frightened and greatly excited
because of the sudden collision and matters incident thereto.

Appellee in his testimony upon the trial gave his ver-
sion of what happened at the time of the collision, sub-

stantially as follows: He was in the third coach back of
the engine, seated with another passenger named Haywood.
At the time of the collision there was a crash, and the next
thing he recalled he was getting up out of a pit on the
outside of the car. He remembered seeing dead bodies
around him in the pit. (The pit, mentioned by him, was
an excavation down the embankment at a point where the
coach he occupied was standing at the time of the collision.)
He did not remember anything about what happened in
the coach, all he remembered was getting up from the pit,
and the next thing he remembered he was down in the city of
Indianapolis, but he had no recollection as to how he got
to the city. In some manner he got some blood on his
trousers, not from his person, however, but from
other persons. He met two of his friends in Indian-
apolis, and they went with him to a tailor's to have his
trousers cleaned. He could not recall any conversation he
had with the two men. He sent a telegram to his mother
at LaFayette, and stated in the telegram that he was not
injured. It appears that the point where he met his friends
in the city of Indianapolis was on Illinois street, south of
the Claypool hotel about three miles from the place where
the collision occurred. Further testifying, he said: "I do
not know that I received a scratch on my body in the wreck.
I do not think I had any. Did not lose a single drop of
my own blood. I do not know that I had a single spot of
any kind—red, blue or black—on the surface of my body.
I did not have a discoloration of any kind on my body as
a result of that wreck. I did not lose my hat in the wreck.
The blood that I got on my trousers came from somebody else.
At the time of the wreck I had some money in my pocket. Did
not lose it. Did not lose anything out of my pocket. Did not
lose any part of my apparel. I do not know whether I was
thrown out of the window when the crash came. Do not
remember that my clothing was torn in any place. The
ticket which I purchased at LaFayette to Indianapolis called

for a return trip, and I think I used it in going home. There was no bruise or discoloration, cut or bump on my head at the place where it felt sore, and not a wound of any kind on my body. So far as I know I was not struck a single blow. From the time that the crash came until I got down town I do not know whether I was asleep or not. I was not sick nor disabled in any way that affected my memory, that I know of. I have had no trouble with my heart and none with my lungs. After the wreck my chest was sore, and I coughed some. My kidneys and liver are all right.''

The two friends to whom appellee referred as meeting down in the city of Indianapolis testified that they met him between the Claypool hotel and the Union Station about 1 o'clock, that when they met him he did not seem to be hurt; he was walking and was excited and nervous. Appellee's evidence shows that until he was about sixteen years of age he was "puny," but after that time he became rugged; that up to the age of fifteen he had trouble with his stomach. He commenced his studies at Purdue University about the seventh or tenth of September, 1903. His studies consisted of solid geometry, English, German, mechanical drawing, forge work and shop lectures. In a day or two after the accident in question it appears he returned to school at Purdue and pursued his studies. He performed some manual labor in the shop at the university in connection with his studies, and continued as a student at that institution in the freshman class until the close of the school year in 1904. Thereafter, as the evidence shows, he went to his father's farm and performed some farm work such as plowing corn and operating a cultivator, etc. In the fall of 1904 he husked corn. He complained during the time of being sore. In his conversation with his friends he said that he was one of the lucky persons in the wreck that did not get hurt by the collision, that he considered his escape as miraculous.

The evidence which we have set out, together with other facts, we believe presents a singular case, or at least one out of the ordinary. As to the sufficiency of the evidence, however, we express no opinion, because the judgment must be reversed for the giving of an erroneous instruction.

At the request of counsel for appellee the court gave to the jury instruction nine, which is as follows: "If you find for plaintiff, it will be your duty to assess the amount of damages which, in your judgment, plaintiff should recover. In estimating this amount you may take into consideration the loss of time, if any, occasioned by the immediate effects of his injury; his mental and physical suffering caused by and arising out of his injury. In addition you may consider the plaintiff's ability to earn money. He will be entitled to recover for any permanent reduction of his power to earn money by reason of such injury, and the amount assessed by you should be such a sum as, in your judgment from the evidence, will reasonably, justly and fully compensate him for the injury thus sustained, not exceeding the amount of $15,000 asked for in his complaint."

The objections urged against this instruction by counsel for appellant are as follows: (1) That there is nothing alleged in the complaint to show any loss of time on the part of appellee on account of the injury which he alleges he sustained, or that he was deprived of pursuing his usual vocation; (2) that there is an entire absence of any evidence to show that appellee lost any time on account of the alleged injury; (3) that the instruction assumes that appellee was injured, and that mental and physical suffering was caused by such assumed injury.

It is argued that by the instruction in question the jury was permitted to consider, as an element of damages, loss of time by appellee, which was a matter outside of the evidence. Upon another view, counsel say that that part of the instruction which advised the jury that appellee was entitled to recover for loss of time and for reduction of

power to earn money was erroneous, because the evidence establishes that appellee was a minor under the age of twenty-one years at the happening of the accident, and that his minority continued for over eighteen months thereafter; that the evidence further shows that he resided with his father as a member of his family, and had not been emancipated. It is contended, consequently, that damages due to loss of time or inability to earn money during his minority could be recovered only by the father.

Appellee's counsel in their brief admit that there was no evidence offered or admitted upon the trial to show any loss of time by appellee or the value thereof, but they

1. attempt to meet the contentions of appellant's counsel, that the judgment should be reversed because of the erroneous charge in controversy, by advancing the argument that "when it appears from the record that an erroneous or irrelevant instruction did not injuriously affect the rights of the complaining party the judgment will not be reversed on account of its having been given." While the rule as asserted by counsel for appellee is correct, the point, however, which confronts them is that there is no showing in the record that the instruction in controversy was harmless.

As a general rule, where it is shown in a case on appeal to this court that the trial court committed a material error in some ruling, either in giving instructions or otherwise, we must presume that such erroneous ruling was prejudicial to the party complaining in respect thereto, unless it affirmatively appears in some manner from the record that the ruling was harmless, and the burden is not upon the party claiming to be aggrieved thereby to show that he was prejudiced by the erroneous ruling, but the burden rests upon the opposite party to show by the record in the case that the party complaining was not harmed thereby. *Rush* v. *Thompson* (1887) 112 Ind. 158; *Nelson* v. *Welch* (1888), 115 Ind. 270; Elliott, App. Proc. §§594,

632; *Bowlus* v. *Phenix Ins. Co.* (1892), 133 Ind. 106, 20 L. R. A. 400; *American Car, etc., Co.* v. *Clark* (1904), 32 Ind. App. 644; *Greene* v. *White* (1867), 37 N. Y. 405; *Potter* v. *Chicago, etc., R. Co.* (1877), 46 Iowa 399; *Bindbeutal* v. *Street Railway Co.* (1891), 43 Mo. App. 463; *Gillett* v. *Corum* (1870), 5 Kan. 608; 3 Cyc. 386, and authorities cited; Thompson, Charging the Jury §130.

There are no averments in the complaint to disclose that any special damages were sustained on account of loss of time by appellee. It has been settled by numerous decisions of this court that instructions should be pertinent to the issues and applicable to the evidence in the case, and should not tend to lead the jurors to believe that they may consider matters outside the evidence. *Hays* v. *Hynds* (1867), 28 Ind. 531; *Clem* v. *State* (1869), 31 Ind. 480; *Nicklaus* v. *Burns* (1881), 75 Ind. 93, and authorities cited; *Robinson* v. *State* (1899), 152 Ind. 304; *Hanes* v. *State* (1900), 155 Ind. 112; *Blough* v. *Parry* (1896), 144 Ind. 463; *Hill* v. *Newman* (1874)), 47 Ind. 187; *McMahon* v. *Flanders* (1878), 64 Ind. 334; *Lake Erie, etc., R. Co.* v. *Stick* (1896), 143 Ind. 449; *Chicago, etc., R. Co.* v. *Butler* (1894), 10 Ind. App. 244.

In an action to recover damages, all damages which actually and proximately result from the wrongful act in question may be recovered, but in a case where the effect of the injury complained of may result in loss of time or interfere with the business, work, trade or profession of the injured party, thereby resulting in damages to him, such damages are considered as special and provable only when specifically alleged in the complaint. This rule, as the authorities affirm, rests upon the theory that the law will not imply from the injury alone damages peculiar to or resulting in each individual or particular case. *Ohio, etc., R. Co.* v. *Selby* (1874), 47 Ind. 471, 17 Am. Rep. 719; *Lindley* v. *Dempsey*

(1873), 45 Ind. 246; *Union Traction Co.* v. *Sullivan* (1906), 38 Ind. App. 513, and the many authorities cited; *Wabash, etc., R. Co.* v. *Friedman* (1893), 146 Ill. 583; *Baldwin* v. *Western R. Corp.* (1855), 70 Mass. 333; *Tomlinson* v. *Town of Derby* (1876), 43 Conn. 562; *Brown* v. *Chicago, etc., R. Co.* (1883), 80 Mo. 457; *Krueger* v. *Chicago, etc., R. Co.* (1902), 94 Mo. App. 458, 68 S. W. 220; *Chicago, etc., R. Co.* v. *Emmert* (1897), 53 Neb. 237, 73 N. W. 540, 68 Am. St. 602; *Coontz* v. *Missouri Pac. R. Co.* (1893), 115 Mo. 669, 22 S. W. 572; *Stevenson* v. *Smith* (1875), 28 Cal. 102, 87 Am. Dec. 107; *Hunter* v. *Stewart* (1859), 47 Me. 419; *Comminge & Geisler* v. *Stevenson* (1890), 76 Tex. 642, 13 S. W. 556; *Hallock* v. *Belcher* (1864), 42 Barb. 199; *Morris* v. *Winchester, etc., Arms Co.* (1901), 73 Conn. 680, 49 Atl. 180.

2. As previously stated, there is an entire absence of any averments in the complaint to show that as a result of the wrongful act complained of appellee sustained any special damages on account of loss of time. The instruction in question, therefore, was not only inapplicable to the evidence, but was also not pertinent or relevant 6. to the issues in the case. We may properly refer to a few of our decisions applicable to the charge involved.

In the case of *Hanes* v. *State, supra,* we said: "Instructions should be relevant to the issues and pertinent to the evidence, and if an instruction is given concerning a fact or set of facts, to which no evidence has been adduced, it will be reversible error unless it clearly appears that the party affected was not harmed thereby."

In the case of *Hays* v. *Hynds, supra,* this court said: "Instructions should be pertinent to the case. Juries are 3. apt to assume, and are justified in assuming, that they are applicable. * * * And unless the jury utterly disregarded the instruction, it could scarcely fail to mislead them."

In the case of *Nicklaus* v. *Burns, supra,* this court, in speaking in respect to instructions outside the evidence in the case, said: "Jurors are liable enough to consider matters outside of the evidence, without being led off in that direction by instructions from the court. Such practice is well calculated to confuse and mislead the jury. * * * These instructions, being inapplicable to the facts in the case, ought not to have been given; and we cannot say they did not tend to mislead and confuse the jury, to the injury of appellant."

In the case of *Lake Erie, etc., R. Co.* v. *Stick, supra,* the court reaffirmed the holding in the cases of *Hays* v. *Hynds, supra,* and *Nicklaus* v. *Burns, supra.*

In the case of *Blough* v. *Parry, supra,* the court instructed the jury as follows: "Hence, if you believe, from the evidence in this case, that the mind of the testator, Noah Blough, at and before the time of the making of the will, had become thus weak and enfeebled, and that, by the degree of influence herein described, he was induced to make the will in controversy when he would not otherwise have made any will at all, or that he was induced thereby to make his will different from what he otherwise would have done, you should, in such case, find for the plaintiffs." This instruction was held to be erroneous and the judgment was reversed on account thereof. The court said: "As before observed, there being no evidence of undue influence it was error to give the above instruction. It has been generally held by this court to be erroneous to give instructions to the jury not applicable to the case proven by the evidence."

In the case of *Hill* v. *Newman, supra,* the court said in regard to an instruction given: "If the jury believe from the evidence, that Mr. Bailey and the defendant were in partnership," etc. This instruction was held to be erroneous, because it referred to matters outside of the evidence.

In the case of *McMahon* v. *Flanders, supra,* the instruction commenced, "if the jury believe from the evidence,"

etc. It was held that this charge was wrong, because it was inapplicable to the evidence, and for the error in giving it the judgment was reversed.

In the case of *Nicklaus* v. *Burns, supra,* the court said to the jury: "If you believe from the evidence in the case," etc. The instruction was held to be wrong for calling the attention of the jury to matters outside of the evidence, and the judgment was reversed.

In the case of *Chicago, etc., R. Co.* v. *Butler, supra,* the court, in advising the jury what elements they might consider in assessing damages, said: "And, in determining the amount of the same, you will consider the nature and character of the injuries received by him, if any; * * * expenses of curing, or attempting to cure, himself," etc. This charge was condemned by the court because there was no evidence showing the amount or the approximate amount of expenses incurred for medicine, medical attention, etc., and on account of the error in giving it, the judgment was reversed.

7. In the instruction involved there is but one reference to the evidence, which is a general statement at the close, whereby the court advised the jury that the amount assessed should be such a sum as in their judgment, from the evidence, would reasonably compensate plaintiff for the injury.

Instruction nine was the only one by which the jury were advised that they might consider certain specifically enumerated elements in estimating the damages to be awarded to appellee. Therefore, there is no room for the argument of appellee's counsel that the charge, if erroneous, may be said to be cured when considered in connection with other charges of the court in respect to assessment of damages.

Under the facts in the case, the award of $7,000 is liberal, and as there is nothing in the record to show that the jury in assessing damages were not misled by the erroneous charge to the prejudice of appellant, by taking into account in estimating damages, an element which was neither alleged

in the complaint nor established by the evidence in the case, therefore, under the well-settled rule, a reversal must follow.

The instruction may also be said to be open to the objection that it assumes the establishment of certain disputed matters in the case, namely, that appellee was injured and that his mental and physical suffering were the result of such injury. The instruction may possibly be open to further objections urged by appellant, but in respect to these we have given no consideration.

For the error of the court in giving the charge in controversy the judgment is reversed and a new trial ordered.