## DIRECTOR GENERAL OF RAILROADS v. NICEWANNER, ADMINISTRATRIX.

[No. 23,796. Filed October 5, 1923.]

1. MUNICIPAL CORPORATIONS.—*Police Power.—Surrender of.— Statute.*—A city cannot, by contract or ordinance, surrender its police power to exercise control over the streets for the safety of persons using them and regulating the operation of railroad trains through the city, as conferred by clause 49 of §8655 Burns 1914, Acts 1905 p. 254, and the stipulation in a franchise contract, granting a railroad company the right to construct and operate a railroad through said city, that gates should be maintained at a certain crossing and operated day and night could not restrain the city council from adopting an ordinance requiring the gates to be removed and something else substituted, or changing the hours during which the safety gates must be operated. p. 468.

2. RAILROADS.—*City Ordinances Regulating.—Evidence.*—In an action against a railroad company for the death of plaintiff's decedent, struck by defendant's train while driving his automobile over a railroad crossing in a city, it was error to exclude an ordinance prescribing the hours at which watchmen should be on duty to operate crossing gates, such ordinance supplementing a former ordinance on the same subject. p. 469.

3. RAILROADS.—*Crossing Accident.—Instruction.—Contributory Negligence.*—In an action for death of plaintiff's decedent, struck by defendant's train at a railroad crossing, an instruction directly charging that contributory negligence on the part of plaintiff's decedent was a defense as against any liability of defendant for negligence of the railroad company or its employes, should have been given.  p. 470.

4. RAILROADS.— *Crossing Accident.— Instruction.— Defendant's Duty to Operate Gates.—Contributory Negligence.*—In an action for death of plaintiff's decedent, struck by defendant's train at a railroad crossing in a city, an instruction that if the jury believed certain facts, including the alleged fact that "it was the duty of defendant to maintain and operate gates day and night" at this crossing, and that the gates were open when plaintiff's decedent drove on the track, "the defendant is liable in this action, the deceased himself being free from fault or negligence contributing to his death," was faulty in not submitting to the jury the question whether it was the defendant's duty to operate gates day and night at the crossing, and the last clause could be understood by the jury as a declaration that the deceased was free from contributory negligence.  p. 470.

5. RAILROADS. — *Crossing Accident. — Instruction. — Crossing Light.*—In an action for death of plaintiff's decedent struck by defendant's train at a railroad crossing in a city, an instruction as to defendant's liability in case of failure to maintain a crossing light, was erroneous when the complaint did not charge negligence in failing to maintain a crossing light.  p. 471.

From Delaware Circuit Court; *William A. Thompson,* Judge.

Action by Warda Nicewanner, administratrix, against the Director General of Railroads.  From a judgment for plaintiff, the defendant appeals.  *Reversed.*

*Frank L. Littleton, Orr & Clark* and *Forrest Chenoweth,* for appellant.

*White & Haymond* and *Francis A. Shaw,* for appellee.

EWBANK, J.—Appellee sued to recover damages for the death of her decedent, who was killed at a crossing in the city of Evansville by a collision between an automobile which he was driving and a locomotive drawing

a freight train on a railroad operated by appellant. The complaint alleged that the defendant (appellant) was negligent in the following particulars: (a) that he operated his train without a sufficient headlight; (b) at a rate of speed exceeding eight miles an hour in violation of a city ordinance prohibiting a speed greater than eight miles; (c) that he failed to give any signal or warning of the approach of the locomotive and train; and (d) that he failed to close the gates at the crossing, as it was alleged a city ordinance commanded should be done, and thereby invited plaintiff's decedent to drive on the track. It expressly alleged that the railroad company constructed lights and gates at the crossing and that plaintiff's decedent saw the gates standing open as he approached to cross over, and it did not allege a failure to keep the lights burning. And the complaint concluded with an express averment that the injury was caused solely by the negligence of the defendant in the four particulars as charged. With a verdict in favor of the plaintiff, the jury returned answers to interrogatories to the effect that the train was running only six miles an hour, with a sufficient headlight properly burning, that the bell was ringing, that the whistle was blown 800 feet from the crossing, that a light on the street was located ninety feet east of the crossing and decedent approached from the west, and that decedent saw the gates standing open as he approached and drove upon the crossing, and accepted the fact that the gates were open as an invitation to cross; that he was driving the automobile at the rate of eight to ten miles an hour, and that the collision occurred about two hours after midnight; that the street on which he was driving had a paved roadway 80 feet wide from curb to curb, with a sidewalk on each side, which crossed the railroad almost at right angles, that

both the street and the railroad were on embankments elevated above the adjoining ground, that the ground in the angle between them was vacant, that the only obstruction to a view from the street toward the south, from whence the train was coming, was a bill board, which was 110 feet from the railroad track, and that there were no side curtains on the automobile, but that it was raining and weather conditions obscured the view in that direction; and that plaintiff's decedent had before crossed the railroad track at that crossing.

The answers to interrogatories disclose with reasonable certainty that the negligence charged in the complaint of which the jury found defendant to have been guilty was failing to close the gates at the crossing, in compliance with the alleged requirements of a city ordinance, appellee's brief asserting that they "clearly show that the verdict was based on the negligence of appellant in failing to operate the gates."

Overruling the motion for a new trial is assigned as error, under which assignment, appellant complains of the exclusion of certain evidence, and of the giving and refusal to give certain instructions. It was stipulated that the railroad was built under authority of a franchise agreement entered into between the board of public works of the city of Evansville and the railroad company that built the track, as approved by a city ordinance adopted in 1909, reciting the franchise agreement in the preamble, and enacting "that said contract and agreement be in all things confirmed and approved", which agreement stipulated, among other things, that "suitable gates are to be maintained at" the crossing where the collision occurred, and that "said gates are to be operated day and night", and that for each violation of the provisions as to "maintaining lights or gates" the railroad company should be fined $25. But it contained no specifications as to how the

gates were to be operated, or when they were to be closed and when open, nor any explanation of the provision that they should be "operated day and night", nor what should constitute a punishable violation of "the provisions as to maintaining lights or gates." The defendant offered to introduce and read in evidence a duly authenticated ordinance, adopted in 1916, which it was agreed by the parties had been "in full force and effect continuously since said date", but an objection to it was sustained, and the defendant excepted. This ordinance prescribed the hours during which flagmen or watchmen were required to be on duty or gates to be operated and under what circumstances such gates should be closed or kept open at forty-one different crossings throughout the city of Evansville, on the tracks of five different railroad companies and the tracks of two "unions"' of two or more railroad companies, including the crossing at which plaintiff's decedent was killed, at which crossing it enacted the safety gates should be operated by skilled operators who should remain on duty, and keep the gates closed, while any engine, car, handcar or train of cars was passing, and open at all other times "between the hours of six o'clock A. M. and twelve o'clock P. M. each day", and that any failure to comply with its provisions should be punished by a forfeiture to the city of not less than $10 nor more than $100, and that each day the violation continued should constitute a separate offense.

Appellee insists that a franchise contract entered into by express statutory authority between a railroad company and a city, as represented by the board of public works in negotiating it and the common council in confirming and approving it by ordinance, could not be abrogated or changed by the mere passage of a subsequent ordinance, without any consideration for a new or modified agreement passing from one party to the

other or expressed in such ordinance, and cites the following authorities. *Indianapolis, etc., R. Co.* v. *Town of Newcastle* (1909), 43 Ind. App. 467, 474, 87 N. E. 1067; *Western Paving, etc., Co.* v. *Citizens St. R. Co.* (1891), 128 Ind. 525, 531, 26 N. E. 188, 10 L. R. A. 770, 25 Am. St. 462.

It may be that the part of the franchise agreement as confirmed by ordinance which granted to the railroad company authority to construct and operate a double track railroad over a certain route through the city, and across and along certain streets in and upon parts thereof as designated, and determined how close together the two tracks must be, and bound the railroad company to grade and improve the space between its tracks and for eighteen inches on either side to conform to any improvement laid in the rest of the street, and to pay the cost thereof, and to keep such space in repair, and to indemnify the city for all damages to which it might become liable by reason of the construction of the railroad tracks and bridge, were mere matters of contract, as to which the parties could lawfully bind themselves during the period of time that the contract should remain in force.   But the city could not, by contract or ordinance, surrender its police power, and the common council could not disable itself to enact ordinances, under the authority conferred by clause 49 of §8655 Burns 1914 (Acts 1905 p. 254), "to secure the safety of citizens and other persons in the running of trains or cars in and through any such city   *   *   *; to require persons or corporations owning or operating railroads to fence their respective railroads   *   *   *; to require such persons and corporations to construct and maintain gates and keep flagmen at railroad crossings, and to provide protection against injury to persons or property from the operation of such railroads, trains or cars;   *   *   *

Director General *v.* Nicewanner, Admx.—193 Ind. 463.

to compel persons or corporations owning or operating railroads to construct and maintain bridges, viaducts or tunnels, and approaches thereto, across their respective crossings", etc.   The police power to exercise that control over the streets which is necessary to protect the lives and provide for the safety of persons lawfully thereon cannot be surrendered or contracted away. *Northern Pac. R. Co.* v. *Duluth* (1907), 208 U. S. 583, 596, 28 Sup. Ct. 341, 52 L. Ed. 630, and cases cited; *Grand Trunk W. R. Co.* v. *South Bend* (1912), 227 U. S. 544, 552, 33 Sup. Ct. 303, 57 L. Ed. 633, 44 L. R. A. (N. S.) 405; *Vandalia R. Co.* v. *State, ex rel.* (1906), 166 Ind. 219, 224, 76 N. E. 980, 117 Am. St. 370; *Central Union Tel. Co.* v. *Indianapolis Tel. Co.* (1920), 189 Ind. 210, 223, 126 N. E. 632.

The stipulation in the franchise contract that gates should be maintained at this crossing and operated day and night could not have restrained the city council from adopting an ordinance requiring the gates to be removed and something else substituted, such as a viaduct or bridge over the track, or a tunnel under it, or two watchmen, one stationed at each side of the railroad track, if the number of trains operated on the railroad, and the number and kind of vehicles used on the street and the speed at which they were run over the crossing, should make the use of safety gates inadequate as a protection against collisions.   Neither did it deprive the council of power to enact an ordinance changing the hours during which the safety gates must be operated.

An ordinance enacting that they should be operated between designated hours, prescribing the qualifications of the operators, and fixing the times when the gates should be open and when they should be closed, and enacting that violations of its provisions might be punished by a fine that could be less

than half or more than four times as much as the penalty provided by the earlier ordinance, which had merely approved an agreement that they should be "operated day and night", without any other specification as to the qualifications of the persons operating them or what acts should constitute such "operation", had the effect of supplementing the earlier ordinance. It was error to exclude the ordinance of 1916 when it was offered in evidence.

3. An instruction, directly charging the jury that contributory negligence on the part of plaintiff's decedent, Charles J. Nicewanner, was a defense as against any liability of defendant for negligence of itself or its employees, which was properly requested, should have been given.

Appellant also asked instructions on several other propositions which should have been given, but we shall not stop to consider whether the instructions that the court gave were full enough to cover any or all of the points to which they related, as appellee insists they were.

4. Instruction No. 24, given by the court, was so worded as to declare that if the jury believed certain facts, including the alleged fact that "it was the duty of defendant to maintain and operate gates day and night" at this crossing, and that the gates were open when plaintiff's decedent drove on the track, "the defendant is liable in this action, the deceased himself being free from fault or negligence contributing to his death." It did not refer to the ordinance in any way nor submit to the jury the question whether the duty referred to was imposed by an ordinance, as it should have done. And the last clause was so framed that the jury might probably understand it as a declaration that the deceased was free from contributory negligence, instead of understanding it as submitting to them

for decision the question whether or not he was negligent. It should not have been given in that form.

Instruction No. 25, given by the court, after referring to the franchise contract and ordinance confirming it, under which the court said the railroad was built, contained the following statements, among others: "It is also shown that under and by virtue of said ordinance, contract and franchise, the defendant was required to keep and maintain a light (at said crossing) * * * during the entire night. * * * If the failure of said defendant to maintain said light, if it did so fail, proximately contributed to the accident from and by which decedent lost his life, then and in that case the defendant is liable unless you shall believe from a fair preponderance of the evidence that the decedent was guilty of contributory negligence", etc.

As was stated above, the complaint was drawn on the theory that plaintiff's decedent actually saw the gates standing open, it alleged that a light at the crossing was constructed, and did not contain a charge of negligence in failing to maintain the light and keep it burning. The instruction as to defendants' liability in case its failure to maintain a light at the crossing proximately contributed to cause the injury, therefore, was not within the issues submitted for trial, and should not have been given. The plaintiff is only entitled to recover, if at all, on the cause of action alleged, and an instruction telling the jury that the plaintiff was entitled to recover if she had proved a fact not within the issues was erroneous. *Cleveland, etc., R. Co.* v. *Powers* (1909), 173 Ind. 105, 123, 124, 125, 126, 88 N. E. 1073, 89 N. E. 485; *Cleveland, etc., R. Co.* v. *Case* (1910), 174 Ind. 369, 375, 377, 91 N. E. 238; *Citizens St. R. Co.* v. *Jolly* (1903), 161 Ind. 80, 92, 93, 67 N. E. 935; *National Motor, etc., Co.* v. *Pake* (1915), 60 Ind. App. 366, 372, 109 N. E. 787.

Whether or not the answers to interrogatories show it to have been harmless we need not decide, since the judgment must be reversed on account of other errors, as stated above.

Many other rulings are challenged by counsel for appellant, but the questions of law discussed may not arise on a retrial of the case, and we do not consider nor decide them.

The judgment is reversed, with directions to sustain appellant's motion for a new trial.

Townsend, J., absent.