MONTGOMERY *v.* REILY.

[No. 369A43.  Filed November 24, 1970.  Rehearing denied December 27, 1970.  Transfer denied March 3, 1971.]

*James E. Rocap, Jr., Rocap, Rocap, Reese & Young,* of counsel, of Indianapolis, for appellant.

*Earl C. Townsend, Jr., John F. Townsend, Jr., Townsend and Townsend,* of counsel, of Indianapolis, for appellee.

SULLIVAN, J.—Plaintiff-appellee recovered a jury verdict for personal injuries sustained in a collision between his motorcycle and an automobile driven by defendant-appellant. The facts surrounding the occurrence, insofar as pertinent, are that on April 29, 1967, in the early afternoon plaintiff was operating his motorcycle in Indianapolis, west upon East 16th Street near its intersection with Hawthorne Lane. As he approached said intersection, plaintiff was operating the motorcycle upon an asphalt strip seven feet in width immediately adjacent to the concrete portion of East 16th Street. Said asphalt strip was at a slightly different grade and level than was the concrete portion of the street. The concrete travel lane was eleven feet wide. Plaintiff was in the process of overtaking defendant's automobile on the right, which automobile was also being operated west but in the concrete travel lane, when defendant turned right and north

into Hawthorne Lane colliding with the motorcycle thereby causing plaintiff's injuries.

Along with other assertions of error, defendant claims that the trial court erroneously refused to instruct the jury upon an essential theory of his defense. Defendant tendered his Instruction No. 6, which read as follows:

### "INSTRUCTION NO. 6

"I instruct you that there was in full force and effect on the date of the accident in question a statute of the State of Indiana which provided as follows:

'Overtaking on the right, when permitted. (a) The driver of a vehicle may overtake and pass upon the right of another vehicle which is making or about to make a left turn. (b) The driver of a vehicle may overtake and, allowing a sufficient clearance, pass another vehicle proceeding in the same direction either upon the left or upon the right on a roadway with unobstructed pavement of sufficient width for four (4) or more lines of moving traffic when such movement can be made with safety. *No person shall drive off the pavement or upon the shoulders of the roadway in overtaking or passing on the right.*'

"If you find from a preponderance of the evidence that the plaintiff violated the statute at the time of the collision herein and that such violation was without reasonable excuse therefore, then such violation would constitute contributory negligence on the part of the plaintiff." (Emphasis supplied)

The trial court modified said Instruction and gave it as the court's own, deleting the words above-underscored. Appellant contends that such deletion denied the jury instruction upon an essential theory of his defense. We agree. In deleting that portion of defendant's instruction which referred to the prohibition against driving upon the "shoulder" of a roadway, the trial court effectively found, as a matter of law, that the seven foot asphalt strip was not a shoulder but was rather an established portion of the travel

lanes of the roadway. We believe such conclusion was improperly drawn.

As a general proposition and in other jurisdictions the contrary conclusion would appear to be justified as a matter of law under circumstances such as here presented. In *King* v. *Mattox* (1965), 246 S. C. 1, 142 S. E. 2d 209, the defendant operated an automobile into plaintiff, a pedestrian. As plaintiff argues here, it was defendant's position in the *King* case that the "tar and gravel strip adjacent to the concrete portion of the roadway" was part of the "roadway and not the shoulder or berm." The court held at page 211,

> "Although the tar and gravel strip adjacent to the concrete portion of U. S. Highway 123 is improved it is not ordinarily used for vehicular travel and is, therefore, considered to be the shoulder or berm within the meaning of the Statutes. * * *"

Similarly, in considering a statute which prohibited parking upon "the paved or improved or main traveled part of the highway", the Illinois Appellate Court said in *Kennedy* v. *Burnett* (1954), 1 Ill. App. 2d 206, 117 N. E. 2d 303, 306:

> "* * * It would seem that the plain meaning of the statute is that the paved or improved or main traveled part of the highway referred only to the concrete slab and has no reference to the shoulders, * * *. In the Texas case of Jackson v. Edmondson, Tex. Civ. App., 129 S. W. 2d 369, 372, the Court has passed upon a statute very similar to the Illinois Act, which was interpreted to mean what this Court has suggested, to-wit:
>
>> 'Manifestly it is the paved or hard surfaced portion of the highway which the statute prohibits the parking of vehicles on. It is a matter of common knowledge, as well as the evidence in the instant case, that the paved or hard surfaced portion of a highway is the "main traveled portion" of it. It is also common knowledge that the graveled or caliche shoulder to any paved or hard surfaced highway is the place vehicles are usually parked for temporary repairs or to change tires, etc.' "

See also *DeLucia* v. *Kneeland* (1928), 108 Conn. 191, 142 A. 742.

We, however, do not deem it necessary or appropriate to determine this matter as a question of law. Certain of the testimony is relevant in this regard. Plaintiff testified that he "went on the shoulder to go around Montgomery's car". Defendant testified that the asphalt strip which he referred to as a shoulder was not wide enough for a regular driving lane. A companion of the plaintiff also riding a motorcycle at the time and place of the occurrence testified that the asphalt strip was "just about wide enough for a car but that it was not used as a main travel lane". He further stated that plaintiff at the time of the collision "was over on the side embankment to go around [Montgomery]", and that the "embankment" was an asphalt strip "a little off-set off the concrete * * * approximately a half inch down" from the level of the concrete.

To be sure, whether or not the asphalt strip here in question did or did not constitute a "shoulder" of the roadway is not determinable merely by what people call it or for that matter, by what someone's opinion of it may be. Yet, the ordinary use of such strip is indicated by the witnesses' use of the term "shoulder" to refer to the asphalt strip. In any event, the jury was entitled to consider that testimony, along with all physical facts and in the light of their ordinary experience in the day to day affairs of life, in making a factual determination within its sole prerogative. Where the law, as in this case, does not otherwise define or fix the meaning of the term "shoulder" it was for the jury to make that determination as a question of fact. Having so considered all of the evidence, the jury was entitled to an instruction concerning the operation of plaintiff's vehicle on a roadway shoulder if they found such to be the fact.

In *Ketchum* v. *Pattee* (1940), 37 Cal. App. (2d) 122, 98 P. 2d 1051, 1053-54, this subject was appropriately treated and the court, considering a statute using language almost identical to the Indiana statutory provisions we deem here applicable, there said:

"* * * [The highway] consists of three lanes of 'ordinary rough non-skid pavement', the west lane and the middle lane each being 11 feet, 8 inches wide and the east lane being 12 feet wide. The pavement is flanked on each side by a shoulder of oiled macadam material with a dirt shoulder adjoining the oiled shoulders on each side of the highway, the dirt shoulder being 'comparatively flat'. * * *

\* \* \*

"* * * It is apparent from the sections of the Vehicle Code and the authorities which have been cited above, that the meaning of the term 'main traveled portion of the highway', as used in sections 582 and 584 of the Vehicle Code, must depend upon the factual situation in each particular case, rather than upon the materials used or the type of road bed adopted in constructing the highway. It is true that, where paved lanes exist, the expression 'main traveled portion of the highway' ordinarily refers to such paved lanes, but it may include the shoulders also if they are ordinarily used for vehicular travel. There is no evidence in the present case which discloses whether the oiled shoulder was ordinarily or frequently used for vehicular travel or not so used, although the photographs in evidence indicate quite clearly that the oiled shoulders were easily available for such travel, and we cannot under the circumstances of this case assume that stopping on the oiled shoulder came within the purview of sections 582 and 584 of the Vehicle Code and was negligent per se."

The word "shoulder" has been neither legislatively nor judicially defined with regard to the Motor Vehicle or Highway Acts. Under the Indiana statutes, however, "highways" and "roadways" are defined as follows:

"(a)    Street or Highway. The entire width between the boundary lines of every way publicly maintained when any part thereof is *open to the use* of the public for purposes of vehicular travel.

\* \* \*

"(c)    Roadway. That portion of a highway improved, designed, or *ordinarily used* for vehicular travel." (Emphasis supplied) Acts 1939, ch. 48, § 14, as found in Ind. Ann. Stat. 47-1814 (Burns' 1965 Repl.).

The underscored phrases in subsections (a) and (c) above indicate that whether a given area is or is not a street, high-

way or roadway depends upon use factors and that the determination is not necessarily dictated by the physical appearance of the area considered, although that appearance may well be considered. That this is also true of the "shoulder" of a road, street or highway is merely the logical progression of the definition of "street, highway or roadway". We, therefore, hold that reasonable men might find under the facts here that plaintiff was in fact driving upon the shoulders of the roadway in overtaking or passing the Montgomery car. Compare *Borg* v. *Larson* (1916), 60 Ind. App. 514, 111 N. E. 201.

There is no doubt that a jury, even correctly instructed in all particulars complained of by defendant, could well return a verdict for plaintiff. The fact remains, however, that defendant was entitled to have his theory of defense fully and adequately presented to the jury by the instructions. *Deming Hotel Co.* v. *Prox* (1968), 142 Ind. App. 603, 236 N. E. 2d 613. When the court determined as a matter of law that the asphalt strip was not a shoulder of the roadway it invaded the province of the jury and in deleting that portion of defendant's tendered Instruction No. 6, denied him the right to have the jury fully instructed on a valid theory of defense.

Some mention should be made, we think, of a second specification of error asserted by defendant-appellant. Although a consideration of plaintiff's Instruction No. 9 may be deemed superfluous in the light of our earlier discussion, it might well be tendered upon retrial and we think it appropriate to indicate our disfavor for that instruction.

Instruction No. 9, tendered by plaintiff and given by the court was as follows:

"You are instructed that contributory negligence is never a defense against negligence on the part of the defendant unless the contributory negligence was a direct cause of the accident complained of. If, therefore, you find that the sole proximate cause of the collision herein was a negligent act or a negligent failure to act on the part of Mr. Montgomery

in some manner alleged in the complaint, then you must find in favor of Dennis Reily even though you should find that he was guilty of some contributory negligence."

This instruction presents for the consideration of the jury a legally impossible hypothetical situation, and based upon the existence of that situation requires a verdict for plaintiff. Negligence on the part of a defendant which is the *sole* proximate cause of a collision which results in injury cannot coexist with contributory negligence on the part of a plaintiff. As stated in *Huey* v. *Milligan* (1961), 242 Ind. 93, 103, 175 N. E. 2d 698:

> "The rule which has generally been followed in Indiana conforms to that enunciated by Restatement of the Law of Torts which defines contributory negligence as conduct on the part of the plaintiff 'which is a legally contributing cause, co-operating with the negligence of the defendant in bringing about the plaintiff's harm.' Restatement, Torts, Vol. 2, § 463, p. 1227, (1934)."

A particularly astute jury, in the light of other instructions dealing with negligence, proximate cause and contributory negligence, might be able to recognize the subtle defect present in the instruction and disregard it. But unless the jury would, in fact, utterly disregard the instruction it could scarcely fail to mislead them. *Cleveland, C. C. & St. L. Ry.* v. *Case* (1910), 174 Ind. 369, 91 N. E. 238; *Hays* v. *Hynds* (1867), 28 Ind. 531. As stated in *Harper* v. *James* (1965), 246 Ind. 131, 134, 203 N. E. 2d 531, quoting from *Fowler* v. *Wallace* (1892), 131 Ind. 347, 31 N. E. 53:

> " '. . . It is an elementary principle of procedure that the court can not by contradictory instructions leave to the jury the duty of determining which of the two lines of instructions shall be followed, or what rule of law shall control the case. The law must come from the court, and be so declared that the jury can follow it without confusion.' "

Plaintiff's erroneous Instruction No. 9 dealt with a material proposition of the case. It must be presumed, therefore, that

the error was prejudicial to defendant. Accordingly and exclusive of any and all other error, we could not say that such instruction did not taint the verdict. *Pawlisch* v. *Atkins* (1932), 96 Ind. App. 132 at 138, 183 N. E. 636.

We do not now rule upon other assertions of error for we trust that additional error, if any, committed by the trial court in instructing the jury as claimed by appellant, will not occur upon retrial and that counsel will, in framing and tendering their instructions guard against the same possible pitfalls.

The judgment below is reversed and the cause remanded with instructions to grant defendant's Motion for New Trial.

Lowdermilk, C.J., Carson and Lybrook, JJ., concur.

NOTE.—Reported in 263 N. E. 2d 752.