CINCINNATI, INDIANAPOLIS AND WESTERN RAILROAD COMPANY *v.* LITTLE, ADMINISTRATOR.

[No. 23,510.   Filed June 22, 1921.]

1.   APPEAL.—*Review.—Harmless Error.—Overruling Motion to Make Immaterial Averment More Specific.*—Overruling a motion to make more specific allegations of the complaint not constituting a necessary part of the statement of the alleged cause of action is not reversible error.   p. 668.

2.   PLEADING.— *Complaint.— Conclusions of Law.— Motion to Make More Specific.—Statutes.*—In an action under the Federal Employers' Liability Act (§8657 et seq. U. S. Comp. Stat. 1918, 35 Stat. at L. 65) for the death of a railroad engineer, overruling a motion to make more specific an allegation in the complaint that the injury and death "was caused solely by the negligent acts and omissions of the defendant" *held* not error, where the negligent acts relied on were set out, the quoted words having reference to such facts.   p. 668.

3.   MASTER AND SERVANT.—*Injuries to Servant.—Complaint.— Sufficiency.—Federal Employers' Liability Act.*—In an action against a railroad company under the federal Employers' Liability Act (§8657 *et seq.* U. S. Comp. Stat. 1918, 35 Stat. at L. 65) for the death of an engineer killed in collision with an

Cincinnati, etc., R. Co. *v.* Little, Admr.—190 Ind. 662.

engine negligently placed on a sidetrack, complaint *held* sufficient, as against demurrer, to charge actionable negligence. pp. 669, 670.

4. MASTER AND SERVANT.—*Injuries to Servant.—Contributory Negligence.—Federal Employers' Liability Act.*—In an action under the federal Employers' Liability Act (§8657 *et seq.* U. S. Comp. Stat. 1918, 35 Stat. at L. 65) for the death of a locomotive engineer, contributory negligence of deceased is not sufficient of itself to defeat recovery, under §3 of the act.    p. 669.

5. TRIAL.—*Instructions.—Incorporating Complaint.—Immaterial Allegations.*—The practice of reading the complaint to the jury, where it alleges facts that are immaterial, is not to be commended.    p. 670.

6. APPEAL.— *Review.— Harmless Error.— Instructions.— Incorporating Complaint.—Immaterial Allegations.*—In an action to recover for wrongful death, the action of the court in giving an instruction setting out the complaint in full, without any suggestion as to which averments were not material, and directing the jury to find for plaintiff if "such allegations" were proved, was harmless, where the jury was not told that plaintiff could recover upon proof of less than all the material allegations of the complaint.    p. 670.

7. APPEAL.— *Review.— Instructions.— Negligence.— Incomplete Instructions.—Duty to Request Broader Instructions.—Statutes.* In an action against a railroad company under the federal Employers' Liability Act (§8657 *et seq.* U. S. Comp. Stat. 1918, 35 Stat. at L. 65) for the death of an engineer in a collision with an engine, caused by an employe's violation of the rules of defendant company, which claimed the deceased was contributorily negligent, the giving of an instruction in general terms on negligence, which was correct as far as it went, but which did not purport to define contributory negligence or refer to the violation of the company's rules, *held* not reversible error, in the absence of a request for an instruction supplying the omission.    p. 671.

8. APPEAL.—*Review.—Instructions.—Failure to Limit Jury to Consideration of Evidentiary Facts.*—In an action for wrongful death, the giving of an instruction authorizing the jury, in determining the credibility of a witness, "to consider his appearance, conduct, manner of testifying," etc., and stating that "any other fact or circumstances which from your experience and observation you believe will aid you in arriving at the truth in this cause may be considered, and given such weight as you think it is justly entitled to," *held* error, in that the instruction did not limit the jury to a consideration of the facts in evidence, and that such error entitled appellant

to a reversal, in view of the issues of fact involved and the sharply conflicting evidence. (Townsend C. J. dissents.)  p. 671.

9.   APPEAL.—*Review.— Instructions.— Error.— Curing by Other Instructions.—Statutes.*—In an action under the federal Employers' Liability Act (§8657 *et seq.* U. S. Comp. Stat. 1918, 35 Stat. at L. 65) for the death of an employe, an instruction that defendant was liable if the death was caused by the negligence of the officers, agents or employes of the railroad company *held* not erroneous because failing to exclude the case of injury being fully due to deceased's own negligence, where other instructions authorized a verdict for defendant if the injury and death was caused entirely by the negligence of deceased.   p. 674.

10.   MASTER AND SERVANT.—*Injuries to Servant.—Instructions. —Proximate Cause.—Statutes.*  In an action against a railroad company under the federal Employers' Liability Act (§8657 *et seq.* U. S. Comp. Stat. 1918, 35 Stat. at L. 65) to recover for the death of an engineer, an instruction that, if the death was caused by the negligence of the officers, agents or employes of defendant, it was liable, *held* objectionable, in that it failed to state that such negligence, to make defendant liable, must have been the proximate cause of the injury.   p. 674.

11.   DEATH.—*Instructions.—Apportionment of Damages.*—In an action against a railroad company under the federal Employers' Liability Act (§8657 *et seq.* U. S. Comp. Stat. 1918, 35 Stat. at L. 65) for the death of an employe who was survived by a widow and minor children, an instruction as to the form of verdict for plaintiff which did not require the jury to apportion the damages among the widow and children *held* not ground for reversal, since the failure to apportion damages in such a case could not affect the substantial rights of defendant.   p. 674.

12.   APPEAL.—*Review.—Refusal of Instructions.—Invading Province of Jury.*—In an action under the federal Employers' Liability Act (§8657 *et seq.* U. S. Comp. Stat. 1918, 35 Stat. at L. 65) for the death of an engineer in a collision with another train upon a sidetrack upon which he was to have run his engine to permit such other train to pass, the refusal of an instruction that, if such train had not yet entered the sidetrack, any failure to put out a warning flag was not a proximate cause of the injury, and that the jury "should not consider any possible negligence of the defendant that was not a proximate cause of the wreck" *held* proper, since such instruction, being a declaration of law based, in part, upon evidence which the jury might have refused to believe, would have invaded the province of the jury.   p. 675.

Cincinnati, etc., R. Co. v. Little, Admr.—190 Ind. 662.

13. MASTER AND SERVANT.—*Injuries to Servant.—Action.—Evidence.—Speed of Locomotive.—Position of Reverse Lever.*—In an action against a railroad company under the federal Employers' Liability Act (§8657 *et seq.* U. S. Comp. Stat. 1918, 35 Stat. at L. 65) for the death of an engineer in a collision, where it was contended that deceased was operating his engine at an excessive rate of speed, the testimony of a witness, who had been the first to enter the cab of deceased's engine after the wreck, as to the position of the reverse lever *held* admissible on the issue as to the rate of speed at which deceased had been running the train immediately prior to the wreck. p. 677.

14. APPEAL.— *Review.— Evidence.— Admission of Incompetent Evidence.*—In an action against a railroad company under the federal Employers' Liability Act (§8657 *et seq.* U. S. Comp. Stat. 1918, 35 Stat. at L. 65) for the death of an engineer in a collision, error in the admission of testimony of trainmen as to their duties under certain circumstances under the rules of the company governing the operation of trains *held* not rendered harmless by other evidence, in view of the conflict in evidence upon the matters to which such incompetent testimony related. p. 678.

15. TRIAL.—*Separation of Witnesses.—Discretion of Court.*— The separation of witnesses during trial is a matter concerning which the court has a very wide discretion. p. 680.

16. DEATH.—*Wrongful Death.—Damages Recoverable by Widow and Infant Children.*—In an action for wrongful death, the infant children of deceased were entitled to recover damages for their loss until they became twenty-one years of age, and the widow for the period of her husband's life expectancy. p. 681.

From Marion Superior Court (105,056); *John H. Kingsbury,* Special Judge.

Action by Earl W. Little, Administrator of the estate of Otto J. Owen, deceased, against the Cincinnati, Indianapolis and Western Railroad Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*J. W. Fesler, Harvey J. Elam, Howard S. Young* and *Solon J. Carter,* for appellant.

*Frank S. Roby, Edward W. Little* and *Earl W. Little,* for appellee.

EWBANK, J.—Appellee, as administrator, sued appellant for damages for causing the death of appellee's decedent, Otto J. Owen, while he was operating one of appellant's railroad locomotives engaged in interstate commerce. Appellee recovered a general verdict and a judgment for $18,000 damages.

The complaint, in a single paragraph, is hereafter set out. Appellant filed motions to make the complaint more specific, in four particulars, as enumerated, which motions were each overruled and appellant excepted. It then demurred to the complaint for alleged failure to state facts sufficient to constitute a cause of action, which demurrer was overruled and appellant excepted. After the verdict was returned, appellant duly filed its motion for a new trial for the alleged reasons that the verdict is not sustained by sufficient evidence and is contrary to law; that the damages are excessive; that the court erred in giving certain instructions, in refusing to give certain others which were requested, in permitting decedent's widow to remain in the courtroom when the witnesses were ordered separated, and in admitting certain evidence and excluding certain other evidence. The motion for a new trial was overruled and appellant excepted. The court granted time to file a bill of exceptions, which was duly filed within the time allowed and appellant perfected its appeal. The errors properly assigned are overruling the motion to make the complaint more specific, overruling the demurrer to the complaint, and overruling the motion for a new trial.

The complaint alleged that appellee's decedent, as an engineer, was operating an interstate extra freight train eastward under written orders to meet a west-bound extra at Maplewood, and to run his train into the sidetrack there from the west end of the siding, while the west-bound extra was required by the rules of appel-

lant to occupy the main track adjoining; that appellant's servants operating the west-bound train, with knowledge of said facts and said rules, "negligently and carelessly left a portion of appellant's said train standing on and blocking the main track adjoining said sidetrack, and negligently turned said switch at the west end of said siding, and ran said engine of appellant's said train into and upon said siding, and negligently * * *. blocked said sidetrack by said engine, and negligently left said switch open and connected to said sidetrack * * * negligently failed to sufficiently warn and flag * * * said east-bound train * * * and negligently placed a locomotive engine on said (side) track —— feet from the west end thereof, without having any light or signal upon or ahead of the same"; and that appellee's decedent, under orders to take the siding and pass the west-bound train, finding the west switch set to run his train into the side track, ran his train in "at a reasonable and proper speed at which to take said siding," and collided with the engine of the west-bound train, standing on the siding, and was thereby killed; that "said collision and injury to decedent * * * was without any fault, negligence or knowledge on the part of the decedent, and was caused solely by reason of the negligent acts and omissions of said appellant; * * * and that said decedent at the time of said collision and prior thereto was acting in conformity to and in compliance with said orders" to meet and pass the other train at Maplewood. It was also alleged that rules of appellant company provided that "trains must pull into the sidings going forward when practicable," and that "when a train stops or is delayed, under circumstances in which it may be overtaken by another train," the flagman must go out and set stop signals, and that "the front of the train must be protected in the same way when necessary by the

head brakeman" or the fireman, and that "flagmen must not be sent out to flag only certain trains; they must flag all trains."

Appellant filed motions to make more specific: (1) The averment that it "negligently left a portion of said defendant's said train standing on and blocking the main track," as against the allegation that it was the duty of those in charge of that train "to occupy the main track adjoining said siding"; and (2) to fill the blank with reference to the number of feet that the locomotive stood from the west end of the switch; and (3) to state the facts supporting the alleged conclusion that "said east-bound train was being run at a reasonable and proper speed at which to take said siding"; and (4) to state specifically the facts on which is based the alleged conclusion that the collision and injury "was caused solely by reason of the negligent acts and omissions of said defendant"; and it excepted to the overruling of each of such motions.

That neither of the first three averments thus questioned is as specific as the rules of good pleading would require is obvious. But neither of them was a 1. necessary part of the statement of the alleged cause of action, and it is not reversible error to overrule a motion to make specific an immaterial averment. *Premier Motor Mfg. Co.* v. *Tilford* (1916), 61 Ind. App. 164, 167, 111 N. E. 645; *Indiana Stone Co.* v. *Stewart* (1893), 7 Ind. App. 563, 564, 34 N. E. 1019; *Alleman* v. *Wheeler* (1885), 101 Ind. 141, 144.

The fourth clause to which the motion was addressed must be understood as referring to the alleged negligent acts and omissions charged in the complaint to 2. have caused the injury, and as so understood was sufficiently specific. The mere charge in general terms that an injury "was caused solely by the negligent acts and omissions of the defendant," without

alleging that the defendant did any negligent acts, or omitted to do anything, having a tendency to cause it, might have to be disregarded as a mere statement of a conclusion of law. *Temple* v. *State* (1916), 185 Ind. 139, 146, 113 N. E. 233; *Central Bank* v. *Martin* (1918), 70 Ind. App. 387, 121 N. E. 57, 58. But where the negligent acts relied on are set out, such a statement may properly be understood to refer to them. It was not reversible error to overrule the motions to make the complaint more specific.

A demurrer to the complaint as failing to state facts sufficient to constitute a cause of action, in that (1) no negligence of appellant was shown, (2) the acts charged as negligence were not shown to have been the proximate cause of the accident, and (3) that negligence of the deceased was shown to have been the sole cause of the injury, was overruled and appellant excepted.

The substance of the negligence charged in the complaint is that appellant's employes, in charge of its west-bound train No. 308, being under orders to place 3. their train on the main track beside the siding at Maplewood, and there to meet and pass the east-bound train No. 209, which they knew was ordered to run into the switch upon the siding to pass them, detached the engine from their train and placed it upon the siding, and left the switch open as if for No. 209 to run in, when they knew that No. 209 was approaching a short distance away and gave no warning, by flagman or signal or otherwise, that their engine was detached from the train on the main track and placed on the side track. Admitting for the purpose of the argument that facts are stated which also show that appel- 4. lee's decedent was guilty of contributory negligence, that would not be sufficient in itself to defeat the action, under the federal Employers' Liability Act (§8657 *et seq.* U. S. Comp. Stat. 1918, 35 Stat. at L.

65), where the deceased was injured while engaged in interstate commerce, if the employer was guilty of negligence that operated to cause the injury. *Union Pacific R. Co.* v. *Hadley* (1918), 246 U. S. 330, 62 L. Ed. 751, 38 Sup. Ct. 318. We may assume that if no negligence was shown except the negligence of the injured employe there could be no recovery, because his own negligence would bear too large a proportion to the combined negligence of himself and his employer. *Norfolk, etc., R. Co.* v. *Earnest* (1913), 229 U. S. 114, 33 Sup. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C 172. But the complaint sufficiently charged that negligence of employes other than the decedent, for which appellant was answerable, operated to cause the alleged injury and death, to make appellant liable in some amount, and the demurrer was properly overruled.

The court set out the complaint in full in its first instruction, without any suggestion as to which averments were material and which, if any, were not, and by its third instruction told the jury that, "If you find that such allegations have been proved by a fair preponderance of the evidence relevant thereto, then your finding as to such issue should be for the plaintiff."

There were averments in the complaint, especially the charge of having "negligently and carelessly left a portion of defendant's said train standing on and blocking the main track adjoining said sidetrack," which were not material to the alleged cause of action, the proof of which would not tend to establish liability on the part of appellant. The practice of reading the complaint to the jury, as a whole, where it alleges facts that are immaterial, is not to be commended. However, as the jury was not told that the appellee could recover upon proof of less than all of the material allegations of the complaint, appellant

was not harmed. The case is not within those authorities which have held that it was error to instruct that the verdict should be for the plaintiff if the evidence established any one of the acts of negligence alleged to have caused the injury, where some of the acts charged as negligence did not constitute a cause of action.

Without mentioning the consequences of violating an established rule in operating a railroad train when meeting another at a siding on a single-track railroad, as constituting negligence, the court gave a stock instruction (No. 5) in general terms that "negligence is   *   *   *   a failure to do that which a person of ordinary prudence and intelligence would do under the same or similar circumstances, or the doing of that which a person of ordinary prudence and intelligence would not do under the same or similar circumstances."

7.

This instruction did not purport to define contributory negligence as such, and did not mention, nor directly refer to, the effect of violating the rules established by the employer. Appellant admits that this definition of negligence "is reasonably accurate in a great many cases," but complains that as applied to the conduct of railroad employes operating trains at a meeting point, whose conduct was covered by definite rules and instructions, it was not correct. But we think this objection is within the rule that where an instruction does not contain an incorrect statement of the law, but is defective only in what it omits to say, the remedy is to ask an instruction supplying the omission. Giving it was not reversible error. *Cleveland, etc., R. Co.* v. *Harrison* (1912), 178 Ind. 324, 327, 98 N. E. 729.

An instruction (No. 7) told the jury that: "In determining the credibility of any witness and weighing his testimony, it is proper for you to consider his appearance, conduct, manner of tes-

8.

tifying while on the witness stand; whether his statements are reasonable or unreasonable, consistent or inconsistent, and whether they are corroborated or contradicted by other evidence which you deem worthy of credit; the extent of his intelligence, his knowledge and means of knowing of the matters stated; the attention he gave to such matters and his recollection thereof, whether good or bad, his interest in the result of this cause, if any and the nature and extent of it; whether or not he has any feeling, bias or prejudice for or against the plaintiff or the defendant; *and any other fact or circumstance which from your experience and observation you believe will aid you in arriving at the truth in this cause, may be considered and given such weight as you think it is justly entitled to.*"    (Our italics.)

The language of the last sentence of this instruction did not expressly limit the jury to a consideration of facts and circumstances in evidence or before them as part of the case, nor limit to questions of the credibility of witnesses the consideration which the jury was authorized to give to "any other fact or circumstance which from their experience and observation they believed would aid them in arriving at the truth in this cause."    It told them in the most general terms that any such other fact or circumstance "may be considered and given such weight as you think it is justly entitled to." This was error. *Chicago, etc., R. Co.* v. *Fretz* (1909), 173 Ind. 519, 534, 535, 90 N. E. 76; *Monongahela River, etc., Co.* v. *Hardsaw* (1907), 169 Ind. 147, 151, 81 N. E. 492; *Sanitary Can Co.* v. *McKinney* (1913), 52 Ind. App. 379, 386, 100 N. E. 785; *Mesker* v. *Leonard* (1911), 48 Ind. App. 642, 644, 96 N. E. 485; *City of Delphi* v. *Lowery, Admx.* (1881), 74 Ind. 520, 527, 39 Am. Rep. 98.

The appellee cites and relies on a number of decisions, in each of which the court held that under the facts of

that case the error in giving an instruction in the language used in such case was harmless. But in the case at bar the evidence was sharply conflicting on many points, including the amount of decedent's earnings as an engineer, the correct method of operating a railroad under the rules in force on this railroad when the accident occurred, what the decedent and other members of both train crews did and failed to do at that time, whether appellant was guilty of negligence, and whether any negligence of the decedent contributed to cause his injury, and, if so, of what it consisted and what proportion it bore to the combined negligence of himself and appellant. Much of the testimony offered by each party as to all of these matters related to facts about which the average man has, or thinks he has, some smattering of knowledge, and concerning which many men have beliefs which might or might not agree with what the witnesses testified. Under these circumstances the error in giving an instruction that the jury might consider "any other fact or circumstances which from their experience and observation they believed would aid them in arriving at the truth in the case," and might "give it such weight as they thought it was justly entitled to," cannot be known to be harmless. And giving an incorrect instruction under circumstances which would probably prejudice appellant's rights is cause for reversal. *Cleveland, etc., R. Co.* v. *Case* (1910), 174 Ind. 369, 376, 91 N. E. 238; *Cincinnati, etc., R. Co.* v. *Armuth* (1913), 180 Ind. 673, 684, 103 N. E. 738; *Neely* v. *Louisville, etc., Traction Co.* (1913), 53 Ind. App. 659, 670, 102 N. E. 455.

An instruction (No. 8), without any suggestion of an exception in case the only servant of appellant who was guilty of negligence was the decedent himself, and without stating that the negligence referred to must have

been the proximate cause of the injury, told the jury that if the engineer was killed while serving appellant, engaged in interstate commerce, and if "the death of said decedent was caused by the negligence of the officers, agents or employes" of appellant, then in the absence of other facts the appellant was liable for the damages thereby caused.

Appellant complains that this instruction should have been so qualified as to exclude the case of the injury being wholly due to the decedent's own negligence, while he was engaged in interstate commerce as a servant of appellant. But the next instruction (No. 9) told the jury that "if the accident in this case was entirely caused by the negligence of the engineer, Owen, the verdict should be for the defendant," and the one following (No. 10) stated that if it was caused by any temporary incapacity of Owen, and was not due to anybody's negligence the verdict should be for the defendant. These supplied the omissions complained of as the first defect in instruction No. 8. Two other instructions referred to the injury being proximately caused by combined negligence of appellee's decedent and other employes of the appellant, but the failure to qualify the instruction that appellant was liable if the death was "caused by the negligence" of appellant's servants so as to declare such liability only in case the negligence was the proximate cause of the injury, was not supplied. The instruction should not have been given in that form.

An instruction (No. 18) told the jury if they found for the plaintiff to return a verdict that "we * * * find for the plaintiff and assess his damages in the sum of ———— dollars," but said nothing about apportioning the damages among the widow and children, and the verdict was in the form, as stated, for $18,000 damages. Appellant insists that

this was erroneous, and cites *Gulf, etc., R. Co.* v. *Mc-Ginnis* (1913), 228 U. S. 173, 33 Sup. Ct. 426, 57 L. Ed. 785, in which suit was brought for the benefit of certain dependent relatives, and also a married daughter living with her husband, who was not shown to have sustained any pecuniary loss, and a verdict in gross was held to be erroneous.  But where the relatives for whose benefit the action is prosecuted consist of the widow and three minor children, all under eight years of age, the failure of the jury to apportion the damages cannot affect any substantial rights of the defendant.  The error in the instruction No. 18 was not cause for reversing the judgment.  *Central Vermont R. Co.* v. *White* (1915), 238 U. S. 507, 515, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B 252; *Kansas City Southern R. Co.* v. *Leslie* (1915), 238 U. S. 599, 603, 35 Sup. Ct. 844, 59 L. Ed. 1478.

The court refused to give a requested instruction (No. 8) that if all of the west-bound train was east of the west end of the switch, any failure to put out a flag was not a proximate cause of the injury, and that "you should not consider any possible negligence of the defendant that was not a proximate cause of the wreck."  In this there was no error.  The direction that under the circumstances stated any failure to put out a flag was not a proximate cause of the injury was a declaration of law based, in part, upon evidence which the jury might have refused to believe.  Such an instruction would have invaded the province of the jury.

Whether or not it was reversible error to exclude the evidence of which appellant complains depends, in part, upon the evidence that was heard.  Besides proof of the formal parts of the complaint, and evidence that part of the west-bound train stood on the main track adjoining the siding, and that the west switch was turned open, and that the locomotive from the west-bound

train, with its tender westward, stood on the sidetrack 150 or 200 feet east of the west switch with two cars which previously had been there, and that the rules pleaded were in force, there was evidence as follows: That decedent had an order to meet the west-bound train at Maplewood, and to take the siding there for that purpose; that on the west end of the tender of the locomotive on the sidetrack was an incandescent electric light, called a marker light, with a lens from three to eight inches across, as testified by different witnesses, but not a standard headlight; that the rules set out in the complaint were in force; that no flagman was sent out and no signals were set west of the switch at the west end of the siding, but a brakeman was waiting at the west end and did flag decedent there; that rule 90 provided that trains must stop at scheduled meeting or passing stations if the train to be met or passed is of the same class, unless switches are right and the track clear; that these trains were both of the same class, and that both the main track and sidetrack were blocked; that rule 90A provided that "on passing sidings, trains must be run under control prepared to stop, unless the track is seen to be clear," and rule 108 provided that "under control means running at such speed that it can be stopped by the locomotive engineer within his range of vision." The fireman and the conductor on the west-bound train, called by appellee as witnesses, both testified on cross-examination that in running into a switch upon a siding an engineer was required by the rules not to exceed ten miles an hour. The conductor said there was a bulletin order issued by the superintendent to that effect. Nobody testified to the contrary. The conductor on decedent's (east-bound) train testified that it entered the switch upon the siding at about twenty miles an hour; the brakeman on the same train testified that it was going twenty-five to thirty-five miles

an hour into Maplewood; the brakeman on the other (west-bound) train who opened the switch testified that decedent's train was running twenty to thirty miles an hour when it came into the siding; and the conductor on the west-bound train testified that decedent's train was going twenty-five to thirty miles an hour when it hit the siding. All of these witnesses were called by appellant, and gave the said testimony on cross-examination. There was no evidence that the train was running any slower. Two of these witnesses testified that as it entered the siding decedent's engine was "working steam." The witness Pierce testified that steam filled the cab after the collision and it was nearly two hours before they got into it to do any work; that he thought he was the first one in where decedent was, and examined the reverse lever. An objection was sustained to an offer to prove that this lever was at two or three notches in forward motion and appellant excepted.

Counsel for appellant do not suggest any reason why the offered evidence was not competent, and we think that it should have been admitted for its bearing on the question whether or not the decedent was negligent in running his train into the siding at such a rate of speed that he failed to stop it before it ran against the locomotive that stood there. If escaping steam had kept everybody out of the wrecked engine until this witness entered it, and he was the first person in, the condition in which he found the reverse lever would constitute some evidence of how it was when the collision took place. But counsel refer to and rely upon the rule that where a fact is fully established by uncontradicted evidence it is not reversible error to exclude other competent evidence offered to prove the same fact, and refer to the testimony of the witness Cook. Cook's testimony was that he did not know who was the first to enter the cab; that he was

at the rear end of the east-bound train of which he was conductor, when the collision occurred; that he does not know the exact position of the reverse lever, and does not think the throttle was open, but it was "in the forward motion, to a certain extent," and "was probably setting in the drifting notch"; but he could not say whether the throttle was broken, for he "did not examine it." There was no admission or stipulation as to how the lever was set, and the question whether plaintiff's decedent had negligently run into the siding at full speed, or had merely "drifted" in at a rate of speed consistent with reasonable care, was one of the chief points in controversy. It was error to exclude the offered evidence.

The witness Cook, conductor on the east-bound train, was permitted over objections to answer the question "What was the duty of 308 West?" by saying that "308 should have been protected by a flag," and to answer the question "What was your duty on approaching that siding?" by stating that as conductor he was supposed to know that the engineer was under full control when the trains were going to meet there, and appellant excepted in each case.

The witness Henderson, conductor of the west-bound train, was required, over an objection that it called for a conclusion as to what the rule meant, and an exception by appellant, to answer the question "Tell the jury why you did not send a flagman out in accordance with rule 99."

Counsel for appellee do not contend that these questions were proper, or that the answers were competent, but rely upon the rule that the admission of in-

14. competent evidence of facts otherwise established by undisputed evidence is harmless. Appellee's brief does not point out the evidence referred to as

establishing that it was the "duty" of the west-bound extra to send out a flag, and the "duty" of the conductor on the east-bound train to know that the engineer was under full control, but the rules set out as part of the complaint, which were read in evidence, are probably intended. These rules required the use of a flag to protect the front of a train "when necessary," by sending out a flagman "a sufficient distance to insure full protection." And appellee offered evidence which, if it stood alone, might have established that it was "necessary" in this case to send a flag some distance west of the switch. But there was also testimony that the decedent had an order to meet the west-bound train there; that under the rules the decedent's train "should have stopped west of the switch"; that as long as the west-bound train and engine stayed east of the switch there was no rule requiring a flag to be sent out west of the switch under a "meeting order"; that both the main track and sidetrack were blocked, and the locomotive standing on the sidetrack carried a light on the west end that was plainly visible from the main track west of the switch; that the sidetrack was almost straight from the switch to where the collision occurred; that rule 90 provided that "trains must stop at scheduled meeting or passing stations, if the train to be met or passed is of the same class, unless switches are right and the track is clear"; that the rules and bulletin order forbade entering a siding at a speed exceeding ten miles an hour, but that decedent ran in at from twenty to thirty-five miles an hour, and that rules 90A and 108 required a train on a passing siding to be run at such speed that it could be stopped by the locomotive engineer within his range of vision; that these trains were both of the same class, and the sidetrack was not clear, but cars stood on both tracks; that the switch light was

turned so that it showed a red light; that the east-bound train was supposed to stop at the switch to see that everything was clear before coming east of there; that "the rules did not require us (the crew of 308) to have a flagman out to protect the front end" of the west-bound train; that the decedent was required to come up to the switch and stop; that this was a positive meeting point, and the west-bound conductor was not required to put out a flag there; that brakeman Pierce was up around the west end of the west-bound train; that he was the flagman when one was sent out; and that when the east-bound train ran past the switch light into the siding he ran across the sidetrack ahead of decedent's engine, swinging his lantern, making the signal to stop. All of this evidence was given by witnesses called by appellee, much of it in answer to questions by counsel for appellee, and the rest on cross-examination, but without objection by appellee. We think that the evidence tending to prove a duty to send out a flag west of the switch was not wholly undisputed. And we have been unable to find in the record any evidence, except the answer above quoted, charging the conductor of the east-bound train with a duty to know that his engineer had the train "under full control" in approaching the meeting point. The error in permitting these and similar questions to be answered was not rendered harmless by uncontradicted evidence supporting the answers given.

Complaint is made of the manner in which the trial court enforced and in part failed to enforce an order for the separation of the witnesses. But it is 15. not made to appear that the very wide discretion of the court in this matter was abused to appellant's prejudice.

Appellant's paymaster testified that appellee's decedent earned and was paid only $676.90 in the nine

months and six days next before his death, which would be at the rate of $882.91 per year, and a clerk in the auditor's office of appellant produced canceled pay checks and memoranda showing that he received only that amount, including deductions for board. The widow's testimony that he "made $150 a month" was qualified by her statements on cross-examination that he did not have a uniform salary, but his pay depended on the runs he made, that she did not keep an accurate account of it, and did not remember what he made in August or September, and could not say whether he made $87.30 in September (the last full month before his death) or not. Appellee's own witnesses gave evidence, both on direct examination and on cross-examination which, if accepted as true, would establish that the injury was due in part, at least, to contributory negligence of the decedent. But the verdict was for $18,000 damages, which at five per cent., would produce in perpetuity more than appellant's witnesses testified the decedent was earning. His three children, aged three, five and seven, were entitled to recover damages for their loss until they reached the age of twenty-one, and the widow for the period of her husband's life expectancy, which was 30.32 years.

It is not a case where the verdict is so clearly right upon the evidence that the court is justified in disregarding intervening errors.

As the case must be tried again it is not best that we should express an opinion as to whether or not the verdict is supported by sufficient evidence, or the damages excessive.

The judgment is reversed, with directions to grant a new trial.

Myers, J., dissents. Townsend, C. J., dissents as to instruction No. 7.