BALTIMORE AND OHIO SOUTHWESTERN RAILROAD
COMPANY *v.* BERDON, ADMINISTRATOR.

[No. 24,002. Filed April 29, 1924. Opinion modified and re-
hearing denied October 15, 1924.]

1. PLEADING.—*Motion to Make More Specific.—Use of Word
"Duty" in Complaint.*—Where a complaint stated that a rail-
road had only a single track and that trainmen were given
orders, giving another train the right of way, the allegation
that there was a "duty" on the trainmen to wait until the
other train arrived was not indefinite nor uncertain so as to
leave it open to a motion to make it more specific. p. 269.

2. PLEADING.—*Immaterial Averment.—Speed of Train.*—Where
an action was brought for the death of a fireman caused by
the collision of two trains it was not necessary to allege facts
to show why the speed of sixty miles an hour was dangerous
and negligent when the speed was merely incidental to the
action. p. 270.

3. APPEAL.—*Overruling Motion to Make Immaterial Averments
More Specific.—Harmless Error.*—Overruling a motion to
make an immaterial averment more specific is not cause for
reversing the judgment. p. 270.

4. MASTER AND SERVANT.—*Assumption of Risk.—Fellow Servant
in Interstate Commerce.*—Where plaintiff's decedent was killed
while performing service in the operation of an interstate train
the Act of Congress of April 22, 1908, §8657 U. S. Comp.
Stat. 1916 applied, and he did not assume the risk of injury
due to negligence of fellow servants. pp. 270, 275.

5. MASTER AND SERVANT.—*Fellow Servant Doctrine.—Federal
Statute Abrogates Common Law.*—Act of Congress, April 22,
1908, §8657 U. S. Comp. Stat. 1916, which makes interstate
railroad carriers liable to an employee while engaged in inter-
state commerce abrogates the fellow servant rule at common
law. p. 270.

6. DISCOVERY.—*Interrogatories.—Relevancy.—Motion to Strike
Out.*—Where an action was brought for the death of a fire-
man on a railroad engaged in interstate commerce, interroga-
tories, asking whether or not the defendant issued an order
in certain words which did not appear to have been in writing
and whether it gave one train the right of way over another
train on a particular day, were properly held not to be irrele-
vant or hypothetical questions, or asking for an instrument or
calling on the defendant to determine the law on facts stated.
p. 270.

7. EXECUTORS AND ADMINISTRATORS.—*Actions Based on Federal
Statute.—Capacity and Authority to Sue.—Proof on Trial.—*

Baltimore, etc., R. Co. *v.* Berdon, Admr.—195 Ind. 265.

Where an administrator in a state court in an action to enforce a liability created in part by a Federal Statute alleged that he was the administrator of decedent's estate, appointed by a court that had jurisdiction, and the character and capacity in which he sued and his authority to sue were not denied by a pleading under oath, no proof of those matters was necessary at the trial. p. 271.

8. DEATH.—*Death of Brakeman Engaged in Interstate Commerce.—Measure of Damages.*—When the evidence in an action by an administrator of a deceased employee of a railroad engaged in interstate commerce showed that deceased was thirty-five years old, left a widow and five minor children, that deceased had been strong and healthy, industrious and of good habits and had worked as a fireman for six or seven years, an award of $30,000 in damages was not so obviously a result of prejudice, partiality or other improper motive or so obviously the result of the consideration by the jury of an improper element that a court of appeals can know they are excessive. p. 271.

9. DISCOVERY.—*Interrogatories.—Admissibility as Evidence.*— Under the statute (§365 Burns 1914, §359 R. S. 1881) answers to interrogatories are expressly authorized as evidence at the trial. p. 272.

10. EVIDENCE.—*Judicial Notice.—Act of Congress.—Proclamation by President.—Orders Issued by Director General of Railroads.*—Judicial notice will be taken of powers conferred on the President by the Act of Congress relating to the Federal Control of railroads in time of war, Act of August 29, 1916, §1974a U. S. Comp. Stat. 1916, of the proclamation issued by the President assuming control, of the general orders promulgated by the Director General of railroads and of the contracts between the United States and the railroad companies, providing that railroads should have all income and pay all liabilities prior to January 1, 1918. p. 272.

11. RAILROADS.—*Injuries to Persons.—Actions.—Federal Control.*—An action for injuries causing a death on December 29, 1917, was properly brought against a railroad company under the Act of August 29, 1916, §1974a U. S. Comp. Stat. 1916, the President's proclamation, the general orders of the Director General of railroads and the contracts entered into by him with the railroads, providing that the railroads were to have all the income and pay all liabilities prior to January 1, 1918. p. 275.

12. TRIAL.—*Reception of Evidence.—President's Proclamation.*—It was not error for the court to refuse to permit the defendant to read in evidence the proclamation of the President

assuming federal control of the railroads, as the proclamation had the effect of law and it was the duty of the court to interpret the law and declare it by instructions for the guidance of the jury. p. 275.

13. EVIDENCE.—*Judicial Knowledge.—Laws Within Jurisdiction.* —Judicial knowledge will be taken by the court of the law in force within the jurisdiction and it need not be pleaded and proved. p. 275.

14. COMMERCE.—*Interstate Commerce.—Federal Law.—Measure of Damages.*—When persons engage in interstate commerce under the federal law the limitation of the state law as to the liability for damages for causing the death of an employee no longer applies and it cannot be looked to in determining whether the damages assessed by the jury in a case governed by the federal law are excessive. p. 276.

15. APPEAL.—*Preservation of Grounds of Review.—Motion for New Trial Within Time Allowed.*—No question was presented on appeal when it did not sufficiently appear that objections to certain instructions were duly presented to the trial court for review by a motion for new trial within the time allowed. p. 277.

16. JUDGMENT.—*Nunc Pro Tunc Entry After Term.—Jurisdiction of Court.*—In order that a court may have jurisdiction to correct an error in a final judgment, due to the inadvertence of the clerk, by an entry *nunc pro tunc* after the close of the term at which the final judgment was rendered, it must appear both that notice of such intended action had been given to the judgment plaintiff and that there was a written memorandum to amend by showing that the motion had been filed on that date. p. 277.

From Scott Circuit Court; *John R. Carney,* Judge.

Action by Gustav A. Berdon, administrator, against the Baltimore and Ohio Southwestern Railroad Company. From judgment for the plaintiff, the defendant appeals. *Affirmed.*

*McMullen & McMullen, Samuel B. Wells, M. R. Waite* and *W. A. Eggers,* for appellant.

*Thomas E. Honan* and *Beckett & Beckett,* for appellee.

EWBANK, C. J.—Appellee recovered a verdict and judgment against appellant for $30,000 for the death

of his decedent, Joseph F. Hornung. Overruling appellant's motion to make the complaint more specific, overruling its demurrer to the complaint, and overruling its motion for a new trial are assigned as error.

The complaint alleged, in substance, that the plaintiff was duly appointed as administrator of the estate of his decedent by the circuit court of the county in which said decedent lived at the time of his death, and had qualified as such administrator; that defendant was a corporation engaged in operating a railroad extending across Ohio, Indiana, and certain other states, and engaged in interstate commerce as a common carrier for hire; that plaintiff's decedent was in the employ of defendant as a fireman on one of defendant's locomotives in an interstate train operated by defendant on said railroad, between Cincinnati, Ohio, and Seymour, Indiana, and in the line of his employment was working as a servant of defendant in the operation of said train from Cincinnati westward into Indiana, on its way between said points; that said train was being run by defendant as its second No. 23, pursuant to an order which had been made, published and promulgated by defendant, that gave said train the right of way from Milan to North Vernon, stations on said railroad in the State of Indiana, as against trains numbered 2 and 68 and 46, respectively; that there was only a single track on said railroad between the stations named; that defendant's servants in charge of and operating the east bound train No. 2 received said order, and "that under and pursuant to said order it became the duty of said employees, servants and agents running and operating said train No. 2 to hold said train at said city of North Vernon until said train second No. 23 had reached the city of North Vernon as aforesaid, and at said point said trains were scheduled and notified by reason of said order to pass each other," but that defendant's servants

in charge of train No. 2 negligently failed to obey said order, and negligently ran that train toward the east from North Vernon on the same track on which the second No. 23 was approaching from the east, "and negligently ran said train No. 2 east as aforesaid at a high and dangerous rate of speed, to wit: sixty miles an hour toward and into train second No. 23 upon defendant's track" between North Vernon and Milan, "and there negligently collided with said train second No. 23 * * * and thereby struck, injured and killed plaintiff's decedent upon said train second No. 23 in his position upon said locomotive and while performing his duties as said fireman upon said locomotive in the line of his employment"; that said decedent left a wife and five minor children who, because of certain facts stated, were thereby damaged in the sum of $50,000.

Appellant's motion to make the complaint more specific by explaining the use of the word "duty" as applied to the servants operating train No. 2 being required to hold the train at North Vernon was properly overruled. All of the facts which imposed that duty, including the alleged facts that there was only a single track from that city eastward to Milan, and that they had been given an order that train second No. 23 from the other direction had the right of way over train No. 2, were fully stated in the complaint, and the further charge that by reason of such facts it was the duty of those in charge of the east bound train to hold it at North Vernon until the west bound train arrived there was not indefinite nor uncertain. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247, 254, 71 N. E. 218; *Chicago, etc., R. Co.* v. *Hamerick* (1911), 50 Ind. App. 425, 434, 96 N. E. 649; *Wellington* v. *Reynolds* (1912), 177 Ind. 49, 52, 97 N. E. 155.

Neither was it error to overrule the motion to require that the complaint should state facts showing why sixty miles an hour was dangerous and negligent. The gravamen of the alleged cause of action was running an eastbound train along the single track on which a west bound train was approaching that had the right of way, and thereby running it against plaintiff's decedent and killing him, and the speed at which it was operated was merely incidental. Overruling a motion to make an immaterial averment more specific is not cause for reversing the judgment. *Cincinnati, etc., R. Co.* v. *Little, Admr.* (1921), 190 Ind. 662, 131 N. E. 762; *Tecumseh, etc., Mining Co.* v. *Buck* (1922), 192 Ind. 122, 135 N. E. 481.

The complaint charged that plaintiff's decedent was killed in the performance of service in the operation of an interstate train as a servant of defendant in the conduct of its business as a railroad carrier engaged in interstate commerce. Under such circumstances the act of congress (Act April 22, 1908, §8657 U. S. Comp. Stat. 1916) applies, and he did not assume the risk of injury by reason of the negligence of fellow servants. The statute makes an interstate railroad carrier liable in damages to an employee while engaged in interstate commerce for injuries or death resulting in whole or in part from negligence of any "officers, agents or employes of such carrier," and abrogates the fellow servant rule at common law. *Mondou* v. *New York, etc., R. Co.* (1911), 223 U. S. 1, 32 Sup. Ct. 169, 175, 38 L. R. A. (N. S.) 44.

Interrogatories Nos. 4, 5 and 6 inquired whether or not defendant issued and delivered order No. 142, on the date of the accident, whether or not it was in certain words, as set out, and whether or not it gave train second No. 23 the right of way over train No. 2 between Milan and North Vernon on that

day. Defendant's motion to strike them out for the alleged reasons that they were irrelevant and not connected with the pleadings, and that they asked hypothetical questions, asked for a copy of an instrument, and asked defendant to determine the law on the facts stated was overruled, and appellant answered each interrogatory in the affirmative. This ruling was not erroneous. It did not appear from the questions or the answers thereto that the order was in writing, and whether or not the abbreviations used expressed the meaning that one train had the exclusive right to use the single track until it should have passed over it was matter of fact. The facts inquired about were in issue and were material.

The complaint having alleged that plaintiff was the administrator of his decedent's estate, appointed by a court that had jurisdiction, and the character and capacity in which he sued and his authority to sue not having been denied by a pleading under oath, no proof of those matters was necessary at the trial. §371 Burns 1914, §365 R. S. 1881.

We perceive no reason why this rule of evidence should not govern an action in a state court to enforce a liability created, in part, by a federal statute.

7. The defendant had notice of the capacity in which plaintiff was suing from the time the complaint was filed, and knew that it would conclusively admit his capacity to sue as administrator if it should fail to deny such capacity under oath. The evidence was sufficient in this particular.

There was evidence that the deceased was thirty-five years old and had a life expectancy of thirty-one and seventy-eight hundredths years, that he left a
8. widow of his own age, and children aged three, eight, twelve, fourteen and fifteen years, respectively; that he was strong, healthy, sober, indus-

trious, of good habits and kind to his family; that he had worked as a fireman six or seven years, and was receiving from $100 to $130 per month, with some extra at times, and was farming ten acres on which he produced vegetables and hogs, and from which he sold $200 worth per year. We cannot say that the amount of damages awarded was so obviously a result of prejudice, partiality, or other improper motive, or was so obviously a result of the consideration by the jury of an improper element, that a court of appeals can know they are excessive. *City of Indianapolis* v. *Stokes* (1914), 182 Ind. 31, 35, 105 N. E. 477; *Pittsburgh, etc., R. Co.* v. *Smith* (1921), 190 Ind. 656, 131 N. E. 516.

The statute expressly authorized the use of the answers to interrogatories as evidence at the trial. §365 Burns 1914, §359 R. S. 1881. *Combs* v. *Union Trust Co.* (1897), 146 Ind. 688, 694, 695, 46 N. E. 16. There being an express admission of defendant, under oath, by its answers to the interrogatories, that plaintiff's decedent was in the employ of defendant, as fireman on defendant's west bound train second No. 23, on December 29, 1917, the day of the accident, that defendant gave the order referred to, and that said train collided with defendant's train No. 2 on defendant's railroad a mile and a half east of North Vernon, the following facts were matters of judicial knowledge. That under the act of August 29, 1916 (§1974a U. S. Comp. Stat. 1916), "the President, in time of war, is empowered * * * to take possession and assume control of any system or systems of transportation, or any part thereof," etc.; that after war with Germany and Austro-Hungary had been declared, the President issued a proclamation on December 26, 1917, which declared that he did "hereby take possession and assume control at 12 o'clock, noon, on the 28th day of December, 1917, of each and every system

of transportation and the appurtenances thereof located wholly or in part within the boundaries of the continental United States and consisting of railroads, etc. * * * (and after appointing the Director General) until and except so far as said director shall from time to time by general or special orders otherwise provide, the boards of directors, receivers, officers and employees of the various transportation systems shall continue the operation thereof in the usual and ordinary course of the business of common carriers, in the names of their respective companies. Until and except so far as said director shall from time to time otherwise by general or special orders determine, such systems of transportation shall remain subject to all existing statutes and orders of the Interstate Commerce Commission and to all statutes and orders of regulating commissions of the various states in which said systems or any part thereof may be situated. * * * Except with the prior written assent of said director, no attachment by mesne process or on execution shall be levied on or against any of the property used by any of said transportation systems in the conduct of their business as common carriers; but suits may be brought by and against said carriers and judgments rendered as hitherto until and except so far as said director may, by general or special orders, otherwise determine. From and after 12 o'clock on said 28th day of December, 1917, all transportation systems included in this order and proclamation shall conclusively be deemed within the possession and control of said director without further act or notice. But for the purpose of accounting said possession and control shall date from 12 o'clock midnight on December 31, 1917."

Thereafter, on October 28, 1918, the Director General of Railroads issued general order No. 50, which recited

the language of the proclamation quoted above, and the fact that suits were being brought and judgments rendered against carrier corporations on matters based on causes of action arising during federal control, and "therefore ordered that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any court based on contract, binding upon the Director General of Railroads, claim for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of possession, use, control or operation of any railroad or system of transportation by the Director General of Railroads, which action, suit or proceeding but for federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, Director General of Railroads, and not otherwise." The form of contracts between the United States and the several railroad companies which all of such companies were required to enter into as a condition of being guaranteed against loss and assured the payment of current dividends contained the following provision: "No claim is made by the company for compensation for the period between noon of December 28 and midnight of December 31, 1917; and the revenues of said period shall belong to the company, and the expenses thereof shall be paid by the company," etc.

And general orders numbered 2, 10, 17, 20, 21, 30 and 52, respectively, issued by the Director General of Railroads, enlarged upon and emphasized the proposition that it was only from and after midnight of December 31, 1917, that the United States received any part of the income or undertook to pay any of the liabilities arising from the operation of any railroads.

In view of the fact, as above set out, that the President's proclamation by which the railroads were taken over expressly provided that "suits may be brought

against carriers and judgments rendered as hitherto until and except so far as the director general may, by general or special orders otherwise determine," and that the director general has never issued an order to the contrary as to causes of action which arose prior to January 1, 1918, but has made contracts and issued many orders to the effect that the carriers should have all the income and pay all liabilities for the period before that date, an action could properly be maintained against the railroad company for injuries causing death on December 29, 1917.

It follows that the trial court did not err in its several rulings of which appellant makes complaint based on a contention that the law is otherwise.

The proclamation of the President by which the railroads were taken over had the effect of law, and it was the duty of the court to interpret all matters of law and declare them by its instructions for the guidance of the jury. The law in force within the jurisdiction is matter of judicial knowledge, and not something to be pleaded and proved; and it was not error to sustain an objection when the defendant offered to read that proclamation to the jury as evidence. *Carson* v. *Miami Coal Co.* (1923), 194 Ind. 49, 141 N. E. 810; *West* v. *New York, etc., R. Co.* (1918), 233 Mass. 162, 123 N. E. 621, 623.

The judgment is affirmed.

### ON PETITION FOR REHEARING.

EWBANK, J.—Interrogatories were filed asking whether or not plaintiff's decedent was in the employ of defendant on the day of the accident, whether or not on that day defendant issued and delivered to its employees, including decedent, a certain order numbered 142, whether or not that order was in certain words and figures as set out, and stated

that a designated train "had right over" three other designated trains, "Milan to North Vernon," and whether or not that order gave the first mentioned train "right of way over" one of the other trains so indicated "between the towns of Milan * * * and North Vernon * * * on the 29th day of December, 1917," being said date of the accident. The memorandum filed with appellant's motion to strike out these interrogatories suggested that "Interrogatories cannot require conclusions of law, hypothetical questions, determine the law on facts stated or ask for copies of instruments." Assuming this to challenge the interrogatories as having asked for conclusions of law, answers to hypothetical questions, and copies of written instruments and as having asked appellant to determine the law upon facts stated, we do not think the interrogatories open to those objections. Each of them could be and actually was answered by the single word "Yes." Each called for an answer as to a fact, the only matter of law involved being whether or not the United States had so far taken over the property, employees and business of appellant on the date of the accident as to excuse appellant from liability. It does not appear that appellant made any objection to either of the interrogatories on that ground, and the trial court was not bound to think of an objection not suggested by counsel. Therefore we do not feel called upon to decide whether or not such an objection ought to have been sustained if it had been made, further than we have indicated an opinion on the questions presented by what we have already said.

Those who engage in business under the laws of this state are entitled to have their rights and duties determined by the state law, which limits the amount

14. of recovery in an action for causing death to $10,000. But when they engage in interstate

commerce, under the federal law, that limitation no longer applies for any purpose, and we cannot look to it in determining whether or not the damages assessed by the jury in a case governed by the federal law are excessive.

Appellant complains of certain instructions that were given by the court. But no question is presented as to whether or not these instructions were erroneous, because it does not sufficiently appear that they were duly presented to the trial court for review by a motion for a new trial filed within the time allowed by law.

The verdict was returned and judgment was rendered on January 25, 1921, at the January term. The next entry in the order book was made on April 20, 1921, near the end of the last week of the March term, when "the court of its own motion orders above entry (that such motion was filed on February 22, 1921) made at this time *nunc pro tunc*, the same having been omitted through inadvertence of the clerk," etc. But it does not appear that notice of such intended action had been given to the judgment plaintiff, nor that there was any written memorandum to amend by showing that the motion had been filed on that date, both of which would be necessary in order that the court might have jurisdiction to make a *nunc pro tunc* entry after the close of the term at which final judgment was rendered. *Wills* v. *Wills* (1911), 176 Ind. 631, 634, 96 N. E. 763; *Moerecke* v. *Bryan* (1915), 183 Ind. 591, 595, 108 N. E. 948.

The petition for a rehearing is overruled.