CHESAPEAKE AND OHIO RAILWAY COMPANY *v.* FULTZ, ADMINISTRATRIX.

[No. 12,669. Filed April 4, 1928. Rehearing denied June 27, 1928. Transfer denied April 4, 1930. Petition for certiorari to U. S. Supreme Court denied October 20, 1930.]

*Condo & Batton* and *Albert H. Cole,* for appellant.
*Butler & Butler* and *Davis & Mitchel,* for appellee.

ENLOE, J.—This action was brought by the appellee to recover damages, under the federal Employers' Liability Act (45 USCA §§51-59, U. S. Comp. Stat. §§8657-8665), on account of the death of her husband, Solomon S. Fultz, who, at the time of his death, was a brakeman on one of appellant's trains.

It is alleged in the complaint that the appellant was a common carrier of freight and passengers in interstate commerce, and that the deceased was, at the time he came to his death, a brakeman in the service of appellant, on a freight train carrying interstate commerce. The complaint contained several specific charges of negligence, only two of which need be mentioned herein, viz.: failure to maintain the railroad track in a reasonably safe condition, in that it was not properly ballasted whereby "joints" became low, broken and defective, thereby causing a train passing over the same to sway and the wheels thereof to leave the track, and also the failure to see that the cars in said train were in proper repair and safe for use, it being specifically charged that the wheels on some of the cars were worn and the "flanges" thereof

were worn thin, vertical and breakable, thereby rendering such car unfit and unsafe to be used in a train in transporting freight. It is charged that by reason of the condition of said track, as described, and by reason of the unsafe and defective condition of said cars, as to the wheels thereof, the wheels of one of such cars left the rails of said track, thereby causing the wreck in which the said Fultz lost his life.

A demurrer for want of facts to the complaint was overruled, after which answers were filed and the cause submitted to a jury for trial, which resulted in a verdict and judgment in favor of appellee. The errors which have been presented relate to the action of the court in denying a new trial, and in overruling the demurrer to the complaint. We shall first consider the matters involved in the motion for a new trial.

It appears from the testimony of one of the officials of appellant that the wreck in question occurred on August 21, 1922, and that the "wreckage" was not cleared up for several weeks thereafter. While this wreckage was yet on the ground where the wreck occurred, photographs were taken of some of the car wheels that had been a part of one of the wrecked cars; these photographs were taken September 21, 1922. When they were offered in evidence, the objection was made that "there was no sufficient proof that these wheels were in the same condition as at time of wreck." This objection was overruled, and appellant's exception thereto presents the first matter for our consideration.

Under the averments of the complaint as to the car wheels, the only material matters were the alleged "flatness of the tread" and "thin and vertical flange," both conditions due to wear on the wheel.

It would hardly be expected that there could be any material change in the "flatness" of the tread or in the "diameter" or "position" of the flange of a car wheel

in the 30 days that had elapsed between the time of the wreck and the time these photographs were taken, and the court did not err in said ruling.

Complaint is next made that certain questions propounded by counsel for appellant to one of the witnesses for appellee, on cross-examination, were excluded. There was no error in this ruling. While the question asked was objectionable on several grounds we need to state but one of such grounds. The question asked called for a categorical answer—"yes," or "no." It assumed as a part thereof, as one of its elements, the existence of a certain fact, the existence of which was not shown by any evidence, nor shown to be within the knowledge of the witness; without a showing of such knowledge on the part of the said witness as to the existence of said assumed fact, the witness, if he had no knowledge of the existence of said fact, could not give an answer to the same such as demanded; it was decidedly unfair to the said witness, as asked, and the trial court did right in sustaining an objection thereto.

Appellant also complains of the action of the court in giving to the jury instruction No. 9 of the instructions given by the court of its own motion. There was not, nor could be in this case, any dispute as to the fact that the said train was, in part, wrecked—several of the cars leaving the track and being practically demolished—and that, as a result thereof, the said Solomon S. Fultz lost his life. The said instruction contained a clause, "as disclosed by the evidence." This clause related solely to the fact of death of said Fultz, and there was no error in giving said instruction.

Complaint is also made of the action of the court in giving certain other instructions, and in refusing to give certain instructions tendered by counsel for appellant. We have examined the said instructions given, of which complaint is made, and find no

error therein. As to the said requested instructions which were refused, some of them were not applicable to the facts of this case and, therefore, would have been misleading; these were rightly refused. As to those requested which were correct statements of the law and applicable to the facts of this case, in so far as they were refused, they were fully covered by other instructions given.

The appellant next contends that the verdict is not supported by sufficient evidence, and is, therefore, contrary to law, and we shall next examine and consider the evidence. There is competent evidence in the record to support a finding by the jury of the following facts: That, at the place where the derailment occurred and said train was wrecked, there were low joints in the track of appellant; that the wheels of one of the cars which left the track were worn "flat" and the flanges of said wheels were worn thin and perpendicular; that such conditions in the track and wheels would tend to cause a car having such wheels "to sway" and leave the track; that there were marks, after the derailment, upon the top of the rails of the track made by the flange of a car wheel in leaving the track; that a car having wheels of the kind and in the condition of the car in question was dangerous to operate because of its liability to "jump the track," and that it should not have been placed in said train; that the appellant is an interstate railroad, and that the train in question, No. 83, was an interstate-commerce train; that the deceased was a brakeman on train No. 83, and came to his death by the derailment and wrecking of said train.

The record further discloses that car P & R No. 5733 was loaded at Williamsburg, Ohio, and that its destination was Chicago, Illinois, this being one of the cars that was wrecked, and the one having "flat wheels" and "thin flanges," and of which the photograph heretofore

spoken of was taken; that this car came to appellant at Boston, Indiana, and that Boston was the terminal point at which cars were supposed to be inspected; that, as a result of a strike, a number of the employees of appellant —car inspectors and machinists—left its employment July 1, 1922, and that, during the months of July and August, 1922, the company was short of men to inspect cars, and there is no evidence that said P & R car was inspected at Boston, Indiana, before being placed in the said train.

Also, it is suggested that there is no evidence that this P & R car, No. 5733, was the one which first left the track and thereby caused the derailment of the other cars. It is true that there is no *direct* and *positive* evidence covering this fact, but, upon the record before us, it was for the jury to say whether it was the alleged defective car, coupled with the condition of the track at that point, which caused the wreck; it was their province to draw all legitimate inferences from the facts proved in evidence, and, by their verdict, they have found that the negligence alleged in the complaint was the proximate cause of said wreck, and we do not feel called upon to disturb this verdict in this regard.

Appellant next presents that the said deceased was guilty of contributory negligence which caused his death, in that he chose to ride on top of one of the cars instead of in the cab of the engine. We cannot concur in this contention. The appellant offered in evidence no rule of the company requiring a head brakeman—deceased was such—to ride in the cab of the locomotive, nor any rule forbidding such brakeman to ride on top of one of the cars in the train, and there is evidence that it was customary for the head brakeman to ride on top of one of the cars, and it is a matter of common knowledge that brakemen do so ride in the discharge of their duties that they may the better receive and trans-

mit signals between the conductor and engineer, governing the movement of such train.

It is next urged that the damages assessed by the jury, $21,000, are excessive. The deceased, at the time he came to his death, was in good health, had an expectancy of more than 27 years, and, at the time of his death, he was contributing, out of his earnings as such brakeman, to the support of his wife and children approximately $150 per month. Upon this record we cannot say that the damages assessed were excessive. See *Baltimore, etc., R. Co.* v. *Berdon, Admr.* (1924), 195 Ind. 265, 145 N. E. 2; *Texas, etc., R. Co.* v. *Harrington* (1922), 241 S. W. (Texas Civ. App.) 250; *Gulf, etc., R. Co.* v. *Carpenter.* (1918), 201 S. W. (Texas Civ. App.) 270; *Clark* v. *Davis* (1922), 153 Minn. 143, 190 N. W. 45.

The only question remaining for our consideration is the alleged error of the court in overruling the demurrer to the complaint because of the alleged deficiency therein, namely, that it did not directly negative assumption of risk. It is now settled that, as between the master and servants engaged in interstate commerce, the federal Employers' Liability Act has, as to the rights and liabilities of such parties, superseded the state laws which formerly controlled. In *Reed* v. *Director General of Railroads* (1922), 258 U. S. 92, 42 Sup. Ct. 191, 66 L. Ed. 480, in reversing a judgment of the Supreme Court of Pennsylvania, the court said: "In actions under the Federal act, the doctrine of assumption of risk certainly has no application when the negligence of a fellow servant, which the injured party could not have foreseen or expected, is the sole, direct, and immediate cause of the injury. To hold otherwise would conflict with the declaration of Congress that every common carrier by railroad, while engaging in interstate commerce, shall be liable to the personal representative of

any employee killed while employed therein, when death results from the negligence of any of the officers, agents, or employees of such carriers." In the recent case of *Toledo, etc., R. Co.* v. *Allen* (1928), 276 U. S. 165, 48 Sup. Ct. 215, 72 L. Ed. 513, the court said: "And, except as specified in §4 of the Act, the employee assumes the ordinary risks of his employment and, *when obvious or fully known and appreciated by him,* the extraordinary risks and those due to the negligence of his employer and fellow employees." (Our italics.) See, also, *Louisiana R., etc., Co.* v. *McGlory* (1927), 20 Fed. (2d) 545; *New York, etc., R. Co.* v. *McDougall* (1926), 15 Fed. (2d) 283; *Vorhees* v. *Central R. Co. of New Jersey* (1926), 14 Fed. (2d) 899. In the last case above cited, it was said, speaking of assumed risks not covered by the statute, that the only risks assumed by the employee were those known or obvious.

In the case at bar, the deceased was a brakeman on a freight train engaged in interstate commerce. There is no suggestion that it was any part of his duties as such brakeman to inspect cars composing the train upon which he worked. In performing his duties, he was not called upon to see that each of the cars therein was in a proper and safe condition to be placed in said train and moved as a part thereof—that was the work of the inspectors at the terminals where the trains were made up. Nor is there any suggestion that deceased knew of the "flat wheels" and "thin and vertical flanges"—the dangers of the car involved in this case. If it was not the duty of the deceased to inspect said cars, and if he did not know of the defective and dangerous condition of the wheels of said car, he did not, under the authorities above cited, assume the risk of injury thereby. It is true that the complaint herein did not allege that the deceased had no knowledge of the said defective and dangerous condition, but this phase of the case is so fully and com-

pletely covered by the evidence that, under the legislative mandate (§368 Burns 1926), we must affirm the judgment for the reason that the record discloses that this cause has been fairly tried and determined.

Affirmed.

Dausman, J., absent.